**CITY OF ST. PETERS, Missouri,
Plaintiff–Respondent,**

v.

**Martin GRONEFELD et al.,
Defendants–Appellants.**

No. 41777.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 12, 1980.

John T. Bruere, St. Charles, for defendants–appellants.

Rollin J. Moerschel, St. Charles, for plaintiff–respondent.

WEIER, Judge.

The City of St. Peters sought and obtained a declaratory judgment under § 71.015, RSMo 1978, known as the Sawyer Act, declaring that the city met the requirements under this section and obtained authorization to proceed with annexation of an unincorporated area adjacent to the city. St. Peters is a city of the fourth class located in the County of St. Charles. It has had a phenomenal growth in the last decade and

has annexed a large area so that its boundaries now encompass over 6,000 acres. The area now proposed to be annexed is located south of the present city limits and contiguous to the city. It consists mainly of several residential subdivisions. Other facts will be developed as we consider the points relied on by defendants–appellants who are some of the inhabitants of the area to be affected.

The first point raised by these defendants asserts that the trial court erred in overruling defendants' motion to dismiss because of lack of jurisdiction to hear the action on its merits. They charge trial court error in the failure of the court to make a determination under Rule 52.08 prior to the hearing of the case on its merits. Rule 52.08 sets out procedural requirements to maintain a class action. In paragraph (a) prerequisites to the bringing of a class action are described. Paragraph (b) requires that in addition to the requirements of paragraph (a), certain additional prerequisites must be met. Paragraph (c) requires determination by order whether the class action is to be maintained. It also requires notice to all of the members of the class who can be identified through reasonable effort. Determination by the court as to whether the action should proceed as a class action under the Rule ultimately rests within the sound discretion of the trial court. *Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119, 132 (Mo.banc 1979); Rule 52.-08(c)(1). Not all of the prerequisites to bringing and prosecuting a class action set out in Rule 52.08(a) exist in a suit under § 71.015, RSMo 1978. Rule 52.08 ostensibly applies to all class actions. It applies whether the members of the class are to sue or be sued as representatives of all of the members of the class. It requires that the class be so numerous that joinder of all members is impracticable; that there are questions of law or fact common to the class; that the claims or defenses of the representative parties are typical of the claims or defenses of all the class and that the representative parties will fairly and adequately protect the interests of all.

Under § 71.015 a governing body of the city must first adopt a resolution to annex any unincorporated area. Before proceeding further the city is then required to file an action in the circuit court seeking a declaratory judgment authorizing annexation. Under the terms of this section "[s]uch action shall be a class action against the inhabitants of such unincorporated area under the provisions of section 507.070, RSMo." This last section sets out statutory requirements for bringing a class action and antedates Rule 52.08. The standards set out in § 507.070 with respect to bringing class actions as interpreted by the courts are essentially the same as those set out as prerequisites in Rule 52.08. The principal difference under Rule 52.08 lies in the requirement that a determination must be made by order of the court as to whether the class action is to be maintained prior to the bringing of the action. This cannot apply to the bringing of a declaratory judgment action under § 71.015 seeking to authorize annexation proceedings because the statute itself requires that the city must bring this action as a class action against the inhabitants of the unincorporated area. No discretionary power is left in the court under the statute to make that determination. The trial court must determine whether, after the class action is brought, those who are served with summons and who are to act as representatives of the class have been chosen so as to fairly insure adequate representation of all of the members of the class and so as to fairly and adequately protect their interest. The question as to adequate representation and protection of interest of the class must be determined from the particular facts appearing in each case. *City of Salisbury v. Nagel,* 420 S.W.2d 37, 47 (Mo.App.1967). The same requirements are also found in Rule 52.08, which supersedes the provisions of § 507.070. *City of O'Fallon v. Bethman,* 569 S.W.2d 295, 299[2] (Mo.App.1978).

When the City of St. Peters filed its action in this case seeking a declaration from the court authorizing annexation of an unincorporated area, § 71.015 mandated

that the action be a class action against the inhabitants of the unincorporated area. That determination was not left to the discretion of the court. It is therefore evident that some of the provisions of Rule 52.08 were not applicable in this special proceeding and that the requirement of the Rule with regard to having a hearing to determine whether a class action should be filed was inapplicable.

Section 71.015 defines the class of defendants against whom the action shall be brought as "the inhabitants of such unincorporated area." This means all of the inhabitants of the unincorporated area and the only way they can elect to not become inhabitants is to move out of the area affected. They cannot exclude themselves from the class. There was no reason therefore to have a hearing as detailed in Rule 52.08 or to give notice to every inhabitant of the area to determine this question. To hold otherwise would lead to excessive costs and a waste of judicial resources. We have neither found nor been cited to any cases which require that this prefiling procedure be followed in a Sawyer Act case. We rule this point against the appellant.

■ Defendant also contends that the trial court erred in failing to dismiss the case at the end of the trial because there was no evidence to support an entry of an order or judgment as required under Rule 52.08(c) requiring notice be directed to those who have not requested exclusion. For the reasons previously given, we also rule this point against the appellant.

We next consider the contention of the defendants that those who remained as representatives of the class were not fairly chosen and did not adequately and fairly represent the whole class as required under the Rule. To resolve this issue we consider the facts as shown by the court file and the transcript.

This action was brought against 200 persons who were alleged to be inhabitants of the unincorporated area and representative of the class of all who resided there. The attorney who represented the City of St. Peters testified that he obtained the services of an abstracter of title to check the names of all of the property owners in the area sought to be annexed. After obtaining the names of all of the owners of land, the names and addresses of all persons who were mailed tax bills by the collector of St. Charles County on property within the area sought to be annexed were checked to determine the identity of those people who not only owned property in the area but also lived there. If the tax bill was for property in the area but was mailed to a person who did not live there, then that person was not included as a party. Where more than one person owned a tract of land within the area, the first named person only was named as a defendant. This in many cases caused the husband where both husband and wife held title to be named defendant rather than the wife unless the wife was named as the first owner. In cases where there were joint owners of apparently the same sex, the first named would also be the one to be named as defendant. Due to this method of selection, there were only five women who were named as defendants in the lawsuit. Of the 200 that were originally named defendants, 17 were dismissed out as parties voluntarily by the plaintiff leaving a total of 183 defendants, four of whom were women and the remainder men as representatives of the class of the occupants. It should also be noted, however, that the record of service indicates that in many cases where the husband and wife were joint owners, the summons and petition were delivered to the wife at the usual place of abode. Twenty-three of the named defendants were represented by counsel.

■ The proposed unincorporated area consisted mainly of developed residential areas located within two major subdivisions and some small amount of acreage. We consider this method of selecting the defendants who represent the class to be as adequate and comprehensive as might be obtained under the circumstances without making a door–to–door canvass of the area to determine the names of all persons who resided within the area. The fact that 23 of

those named were active in the defense of the lawsuit, that it was vigorously contested and the defendants were ably represented by counsel, prevents us from agreeing with defendants' contention that the trial court erred in overruling the defendants' motion for judgment on the ground that the defendants were not fairly chosen and did not fairly and adequately represent the whole class.

▮ It is next contended that the trial court erred in rendering judgment for the plaintiff–city because it failed to prove that a fairly debatable issue existed as to the necessity and reasonableness of the extension of the city limits as required under § 71.015. Because of the number of standards under which evidence may be weighed and considered by the trial court before arriving at a decision, we will but refer to the cases of *City of Perryville v. Brewer*, 557 S.W.2d 457, 462 (Mo.App.1977), and *City of O'Fallon v. Bethman*, 569 S.W.2d 295, 300–301 (Mo.App.1978) for the listing of such criteria. As is indicated in each of these opinions, a case of reasonableness is made when it appears that the land to be annexed is so situated as to be adaptable to urban purposes and necessary or convenient to a reasonable exercise of the city government. Judicial inquiry is satisfied when substantial evidence has been presented by the city to support the determination of its governing body that the issue of reasonableness is fairly debatable. If reasonable men can differ as to the necessity of the annexation, then the decision of the governing body when it passed the resolution to annex is final and conclusive on the court. We consider some of the evidence presented to the court to determine whether the passage of the resolution by the Board of Aldermen of the City of St. Peters was supported by facts indicating that reasonableness of the action was fairly debatable.

The City of St. Peters has grown rapidly in the last decade. In 1970, the census indicated the population to be 518. In April of 1979, at the time of the hearing on this case, the city manager estimated the population to be 14,000. The area encompassed in the city limits has increased from 83 acres in 1966 to 6,204 acres at the time of trial. The assessed valuation of the city increased from $1,023,000 in 1970 to $42,485,000 in 1978. Major roads have been widened and improved. The water and sewer system has been enlarged and modernized. Fourteen parks are being maintained by the city, one of which exists within less than a mile of the area sought to be annexed. Common grounds located within the subdivisions to be annexed may be incorporated in the park system. In the city parks there are eight ball diamonds, five tennis courts, one basketball court, four playgrounds and a nine hole golf course, three swimming pools, two nature trails, one camping area, three football or soccer fields and approximately ten horseshoe pits. A former country club has been converted to a civic center for the use of the citizens of the city. There are meeting rooms available to the citizens. A summer recreation program is provided for the young people of the city with a low cost tuition charge. Youth counseling services are provided. A trained police force of 23 officers comprise the police department. The assistant chief testified that the force was large enough to police the area to be annexed without additional personnel. Approximately 100 employees service other municipal functions. Snow removal and periodic maintenance of streets is taken care of by a street department. In the fiscal year 1977–1978 the city had a budget surplus of $196,000 and the ad valorem tax rate has been periodically reduced from $1.85 per $100 assessed valuation in 1966 to $1 per $100 assessed valuation in 1978. All of these municipal services could be extended to the area to be annexed within a reasonable time following annexation.

Some of these services have been provided to the area to be annexed by the city with a $3.50 surcharge on monthly water service and police protection through the county sheriff's office. Street maintenance and lighting was provided through assessments on those who lived in the subdivisions involved. It was indicated that in almost

every instance equal or better services could be provided by the city at a reduced cost.

Because of the requirement that annexations may only be made of contiguous territory, areas of natural and future growth for the city beyond this area could be blocked if the annexation is not approved. It is obvious that the land proposed to be annexed is so situated as to be adaptable to urban purposes. Its prior growth has indicated this. It is also obvious from the facts that it is both necessary and convenient to the reasonable exercise of city government that the City of St. Peters be allowed to annex the area. The facts place the case well within the test set forth in *Bethman* and *Brewer, supra; that is,* whether the reasonableness of the proposed annexation was "fairly debatable." We find that it is and deny defendants' contention to the contrary.

The last point on appeal is directed to the trial judge's action in sustaining an objection to a question asked of a witness on cross-examination. The question was asked to impeach his credibility. The action of the court is challenged on the ground that a witness may be asked any question on cross-examination for that purpose. The law is clear that counsel does not have full liberty to cross-examine on collateral matters even when the purpose of the cross-examination is to attack the witness's credibility. The extent of cross-examination on collateral matters for the purpose of impeachment is subject to a broad exercise of discretion by the trial court. If the trial court decides that the matters may be gone into, then rather extensive cross-examination may be allowed. On the other hand if the trial court believes that the cross-examination on such collateral matters would be unfair or would have no tendency to discredit the witness and would unnecessarily prolong the examination, then the court may restrict further interrogation. *State v. Parton,* 487 S.W.2d 523, 526[6, 7] (Mo.1972). Here a witness who had been director of engineering for the city was called on behalf of the city to testify with respect to the technical aspects of the various munici-

pal utilities and facilities. After a thorough and comprehensive cross-examination, in response to a question as to the termination of his services with the City of St. Peters, the witness replied that he had left the employment of the city the Friday before the trial of the case. Defense counsel then asked whether this was at the city's request. In reply the witness stated that it was his decision to leave. Counsel then pressed the witness by asking: "But did the city or any of its administrators or its board request that you leave?" Plaintiff's counsel objected and the objection was sustained. Another question was asked as to whether a city policy with regard to working with developers "more so than what your past experience has been, and that you could not work under those circumstances" was one of the reasons that the witness left the employ of the city. Here again objection was sustained. Defendants were apparently attempting to discredit the witness's testimony by showing that he was fired or forced to resign by the city. If the witness had left the employ of the city under hostile conditions, it would appear that he would more favorably testify in favor of the defendants than his former employer and such an attempt to discredit on this basis would be of no avail. Certainly areas of inquiry were completely collateral to the issues involved in the case and under the circumstances could have very little bearing on the witness's credibility. A somewhat similar situation was presented in the case of *State v. Hill,* 371 S.W.2d 278, 281 (Mo.1963) where a manager of a grocery who testified with regard to the facts of a robbery was questioned on cross-examination whether there was any special reason for him leaving his employment after the robbery. An objection was made and sustained. The court there held that the trial judge was permitted a broad discretion in determining and limiting the scope of the cross-examination. The court further pointed out that the manager had answered another question as to whether his leaving had anything to do with the robbery and the answer had been negative.

Here the witness had been previously interrogated with regard to his reason for leaving and he had replied that it was his decision to leave. We do not find any abuse of discretion on the part of the trial judge in sustaining the objections to further inquiry.

The judgment is affirmed.

PUDLOWSKI, P. J., and GUNN, J., concur.