Larry GROSSER, et al., Plaintiffs-Respondents,

v.

KANDEL–IKEN BUILDERS, INC., Defendant-Appellant.

No. 44932.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 22, 1983.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Richard S. Bender, Clayton, for defendant-appellant.

Homer N. Mastorakos, Chesterfield, for plaintiffs-respondents.

PER CURIAM.

Plaintiffs-respondents, homeowners in Conway Forest Subdivision in St. Louis County, sued the developer, defendant-appellant Kandel-Iken Builders, Inc. for fraudulent misrepresentation. Plaintiffs charged generally that defendant falsely represented that it would build a swimming pool for the residents' use after eighty-five of the planned 130 homes were sold. The eighty-fifth house was sold sometime prior to January 1, 1977. No pool was ever built.

The original petition was filed on August 25, 1977 as a class action. On July 8, 1980 the trial court ordered the suit to proceed as a class action on behalf of "all persons who were and are purchasers and owners of real estate located in Conway Forest Subdivision." The subdivision here contained four stages (plats). After notice of the order was duly published as prescribed by Rule 52.08(c)(2), twenty-one homeowners signed disclaimers. On December 23, 1980, plaintiffs filed a third amended petition which alleged that they fairly represented the homeowners in Stages I and II (approximately sixty-five homes) as representative parties, and that defendant falsely represented orally and in writing to the class of plaintiffs that they would construct a swimming pool as a part of the planned recreational facilities of the subdivision. The trial court was not called upon to re-determine the class after the third amended petition was filed.

The case was tried as a class action and resulted in a jury verdict in favor of plaintiffs, as a class, in the amount of $51,300 actual damages and $10,000 punitive damages.

Defendant argues that plaintiffs failed to make a submissible case of proof of fraudulent misrepresentation and damages. Defendant also contends that plaintiffs failed to meet their burden of proof pursuant to Rule 52.08 that there were questions of law and fact common to the members of the class, and thus the class was improperly certified.

Defendant prepared and filed of record Indentures of Trust and Restrictions on December 10, 1971. Sales of homes began in January, 1972 and continued through 1980. The named plaintiffs purchased homes in Stage I of the subdivision, in 1972 and 1973. Defendant withdrew any mention of a pool after a meeting of property owners sometime in 1976.

Plaintiffs' documentary evidence consisted of the Indentures of Trust, a sales brochure, and nine real estate sales contracts. The Indentures of Trust failed to mention a swimming pool, while the brochure described a "swimming pool" as a "special feature" of the subdivision. Two of the sales contracts offered into evidence contained statements that defendant "would construct at no capital cost to purchaser a swimming pool to be available no sooner than the summer following sale of the eighty-fifth Conway Forest lot." One contract stated that a subdivision pool was to be started when 75% of the homes in the subdivision were completed. The remaining contracts made no mention of a swimming pool.

Plaintiffs' witnesses testified that they had observed the brochure which mentioned a swimming pool. Some witnesses said that they were told the pool would be built on common ground. According to the witnesses, defendant never indicated the size or dimensions of the pool to be constructed, the exact date of construction or the precise location of the pool. They stated that they had no reason to believe defendant's statement of intention to build a swimming pool was false when made.

Defendant's president, Mr. Kandel, testified that at all times he intended to build a swimming pool. His original plan was to build a pool that he or others would own and make available to the subdivision residents. A study ordered by Kandel concluded, however, that such an arrangement

would be economically unfeasible. Kandel's second plan was for the residents to maintain the swimming facility through assessments provided for in the Indentures of Trust. He concluded that to maintain the pool, the Indentures would have to be amended to permit an assessment of $250 per year in place of the original assessment of $75 per year. After the homeowners were notified of the plan they voted to reject the amendment to increase the assessments. Kandel testified that at all times he was willing to build a pool and would do so if the residents would approve the amendment so as to provide sufficient funds to maintain the pool. After the property owners' vote, however, he discontinued the representation that he would build a swimming pool.

We first consider the question of whether plaintiffs made a submissible case of fraudulent misrepresentation. We hold that they did not and that the trial court erred in failing to direct a verdict at the close of all the evidence. In so holding, we view the evidence in the light most favorable to the plaintiffs and give them the benefit of all reasonable, favorable inferences. *Snodgrass v. Headco Industries, Inc.*, 640 S.W.2d 147, 156 (Mo.App.1982).

■ Plaintiffs must present sufficient evidence to reasonably support each element of its cause of action. *Smith v. Archbishop of St. Louis ex rel. Archdiocese of St. Louis*, 632 S.W.2d 516, 521 (Mo.App.1982). Further, the evidence to support an inference of fraud must arise above mere suspicion and point logically and convincingly to that conclusion. *Brown v. Pritchett*, 633 S.W.2d 294 (Mo.App.1982). All doubt should be entertained in favor of good faith in determining whether a statement constitutes a misrepresentation. *Empire Gas Corporation v. Small's LP Gas Co.*, 637 S.W.2d 239, 243 (Mo.App.1982).

■ Plaintiffs' theory required them to prove that defendant's statement of intention was false when made. A false statement of present purpose may under some circumstances be a misstatement of fact and will support a cause of action for fraud-

ulent misrepresentation. *Citizens Bank of Windsor v. Landers*, 570 S.W.2d 756, 761 (Mo.App.1978); *Brennaman v. Andes & Roberts Brothers Construction Co.*, 506 S.W.2d 462, 465 (Mo.App.1973). However, the giving of a promise, even though breached the next day, is not such a fraudulent misstatement of fact as will support an action for fraud. *Parthenopoulos v. Maddox*, 629 S.W.2d 563, 568 (Mo.App.1981); *McGuire v. Bode*, 607 S.W.2d 165, 167 (Mo. App.1980); *Klecker v. Sutton*, 523 S.W.2d 558, 562 (Mo.App.1975). There must be proof of a current intention not to perform and a failure of performance is insufficient to establish this intent or to shift the burden of proof. *Dillard v. Earnhart*, 457 S.W.2d 666, 671 (Mo.1970); *Brennaman*, 506 S.W.2d at 465.

■ A false representation of intention is actionable if the statement is reasonably interpretable as expressing a firm intention. *Dillard*, 457 S.W.2d at 670. Therefore, as in *Dillard*, we must measure the nature and probative value of the evidence adduced at trial to determine first whether defendant made the required representation, and second, whether plaintiffs demonstrated defendant's intention not to perform at the time of the representation. *See Brennaman*, 506 S.W.2d at 465.

■ Plaintiffs have assumed the burden of proving a "diversified promise," as distinguished from a "uniform promise"—the usual subject matter of a fraudulent misrepresentation suit. A uniform promise, for example, would be statements made in a stock prospectus, or an advertisement in a publication, where the same representation was made to a group of people in identical language, at roughly the same time. Here the promise is diversified in that it is made to different individuals at different times and contains different language. The brochure in this case is the only common document that mentions a swimming pool. The sale contracts dated from 1972 to 1975, were the product of separate negotiations, contained different terms and involved only a minority of the class of plaintiffs. The

oral testimony concerning representations about the swimming pool varied as to what was promised. Although there were similarities, the language and the nature of the representation were not identical.

Moreover, the undisputed evidence disclosed that twenty-four homeowners in Stages I and II did not purchase their property from defendant, but from original purchasers. As to these subsequent purchasers, there is no evidence of any promise of any kind from defendant. Further, at least seventeen homeowners purchased property in Stages I and II after January, 1977, when defendant had withdrawn any promise, written or oral, of a swimming pool. There was no evidence that a promise of a pool was made to these homeowners.

We fail to discern any uniform representation made to the class of plaintiffs from which we can say that defendant made a promise that was false when made. We have only the statement made in the brochure, prior to 1977, that a swimming pool was a "feature," of the subdivision. We have nothing definite as to its size, location, means of maintenance and ownership. A representation which is so vague and abstract that the court would have to guess as to its precise nature will not support a cause of action for fraudulent misrepresentation, *Chase Resorts, Inc. v. Johns-Manville Corp.,* 476 F.Supp. 633, 639 (E.D.Mo.1979); *aff'd.,* 620 F.2d 203 (8th Cir.1980), and cannot be the basis of a submissible case.

Even if defendant's promise was sufficiently definite, there was no evidence that at the time the promise was made, the defendant did not intend to build a swimming pool. On the contrary, when defendant decided not to construct the pool, after residents refused to amend the Indentures of Trust, it withdrew the brochure and made no further mention of a pool to prospective purchasers. Although plaintiffs' expectations were disappointed, they cannot prove fraudulent misrepresentation based on defendant's honest statement of his then-existing intention. *Dillard v. Earnhart,* 457 S.W.2d at 670.

We conclude after reviewing all of the evidence in a light most favorable to plaintiffs and giving them the benefit of all favorable and reasonable inferences that the evidence fails to establish a sufficiently clear statement of intention ("diversified" as it was) that was false when made.

We next consider submissibility of the element of damages. The damage instruction stated:

If you find in favor of the class of Plaintiffs, then you must award the class of Plaintiffs such sum as you believe was the difference between the actual value of Plaintiffs' houses on the dates they were sold to the class of Plaintiffs and what their value would have been on those dates had the subdivision been as represented by Defendant.

■ The instruction (MAI 4.03 modified) correctly stated the measure of damages in a misrepresentation case. *Shechter v. Brewer,* 344 S.W.2d 784, 789 (Mo.App.1961). The issues submitted in instructions, however, must be supported by the evidence. An instruction which is not supported by the evidence is erroneous in that it is misleading and confusing. *Walker v. Woolbright Motors, Inc.,* 591 S.W.2d 289, 291 (Mo.App.1979).

■ Looking at the language of the instruction, we cannot see how a jury could find that defendant sold houses to a "Class of Plaintiffs." Obviously, no homes were sold to a "Class of Plaintiffs." To compute the award the instruction called upon the jury to determine what a house would have been worth if, as represented, a swimming pool was to be built, and to subtract the house's value, on the date it was purchased. The jury saw only nine sales contracts dating from 1972 to 1975, however. Although the contracts mentioned the sale price, there was no evidence of the value of any of the homes covered by the sales contracts on their dates of sale if the representation that a pool would be constructed at a future date was true. The jury, then, had no

evidence from which it could have compared prices to determine the difference, "on the dates when they were sold."

Plaintiffs attempted to prove damages by the testimony of Joseph Schulte, a real estate appraiser. Mr. Schulte based his testimony upon data only as far back as 1975 and testified that by comparing subdivisions that had swimming pools with subdivisions without swimming pools, houses in the latter would have a value of $2500 to $3500 less than in the former. He also testified, however, that it would be improper to compare a house sold in 1975 with one sold in 1977, and that a comparable sale would be one of a similar size home within three months. Mr. Schulte's testimony, therefore has no probative value for those plaintiffs who purchased their property in 1972, 1973, 1974 and perhaps in 1975. The instruction clearly was not supported by the evidence.

■ The evidence of damages adduced by plaintiffs at trial was also insufficient to support a submissible case. Plaintiffs must produce the best evidence available and it must be sufficient to afford a reasonable basis for estimating loss. *Shechter v. Brewer*, 344 S.W.2d 784, 791 (Mo.App.1961). Evidence on the value of real estate must relate to the time to which value is to be determined or to a time so near that it may reasonably throw light on the value at such time. *Id.* at 791. *Berry v. Federal Kemper Insurance Co.*, 621 S.W.2d 948, 953 (Mo.App. 1981). Factors in the real estate market may have increased or decreased property value, and changes or trends in the real estate market are not subjects that permit reliable generalization. *Id.* at 953.

Plaintiffs' evidence of damages consisted entirely of generalization and related only to the period after 1975. Their expert's testimony, on the whole, went to what the houses would have been worth, long after their dates of sale. Plaintiffs' method of proving damages and its defects, may have been caused by their attempt to prove fraudulent misrepresentation in a class ac-

tion. Whatever the reason, we cannot say that plaintiffs used the best evidence available and that it related to the time of purchase of homes included within the petition. Accordingly, there was no reasonable certainty as to both the existence and amount of damages. The evidence leaves the matter entirely to speculation. *Haggard v. Mid-States Metal Lines, Inc.*, 591 S.W.2d 71, 77 (Mo.App.1979).

As to at least some of the class of plaintiffs, we question whether they could have any damages. There was no testimony of any damage suffered by those members of the class who bought from defendant and resold their property before the pool was to be built. Members of the class who purchased real estate from defendant after the promise to construct a swimming pool was withdrawn, did not and could not have testified to any damages. The twenty-four property owners who did not purchase from defendant also had no damages. The inclusion of these property owners in the verdict was clearly erroneous.

■ Not only was the instruction incorrect and not supported by the evidence, but plaintiffs failed entirely to make a submissible case of damages. Proof of substantial injury and damage is essential to recovery in any action for fraud and where no damages are sustained as a result of the fraud charge, no action for damages may be maintained. *Mills v. Keasler*, 395 S.W.2d 111, 118 (Mo.1965).

■ Finally, defendant claims that the class of plaintiffs was improperly certified because there were not questions of law and fact common to the class, as required by Rule 52.08(a). Rule 52.08, which is the same as Rule 23 of the Federal Rules of Civil Procedure, also provides that the claims and defenses of the representative parties must be typical of the claims or defenses of the class.

The trial court's order on July 8, 1980 found that the class consisted of "all persons who were and are purchasers and own-

ers of real estate located in Conway Forest Subdivision." Thereafter, on December 23, 1980, plaintiffs amended their petition, stating that they were representative parties of a class of "purchasers and owners of real estate in Stage I and Stage II" of the subdivision, thus excluding owners in Stages III and IV.

Plaintiffs' amendment of their petition, excluding some of the members of the class, after the class had been certified, did not indicate any notice to the excluded members. The trial court did not redetermine the class, although Rule 52.08(c)(1) gives the court the power to alter or amend the class action order before a decision on the merits. 52.08(d) also empowers the court to issue other orders concerning the class.

■ Prior to a decision on the merits, leave to amend the complaint to redefine the class should be freely given except when some prejudice results to the defendant or to those persons dropped from the class. The likelihood of prejudice to those dropped from the class can only be determined by examining carefully the circumstances in each case. *In re New York City Municipal Securities Litigation,* 87 F.R.D. 572, 580–81 (S.D.N.Y.1980). Original class members may remain inactive in reliance on the class action, may not receive notice of their exclusion from the class, and let the statute of limitations run and bar them from asserting a claim. *Id.* at 581; 7A C. Wright and A. Miller, *Federal Practice and Procedure* § 1791, at 193–94 (1972). Here there was no evaluation of prejudice to excluded class members. The trial court erred by accepting plaintiffs' amended petition redefining the class, without making an appropriate order.

■ The definition of the class leads to the conclusion that there were not questions of law and fact common to the class and that the class was inadequately defined. All those who "were and are homeowners" necessarily includes all those that bought homes between 1972 and 1980. Those that bought after the brochure was withdrawn, after 1976, never received any "promise" of a swimming pool, and could not have anything in common with the earlier buyers. Second or third homeowners by definition were included in the class, but never dealt with defendant and could not have relied on any representation made by defendant. Some purchasers had direct references to a pool in their sales contracts, others did not. The homeowners were told various oral representations. Therefore, any promises made by defendant to some of the class members were not the same as made to others and were made at different times, over a period of years. Clearly, a promise made in a contract to a homeowner in 1975 would not support a fraudulent misrepresentation action by a class member who in 1972 was given a differing oral representation which was at best, vague and indefinite.

A fraudulent misrepresentation case, involving a "diversified" promise consisting of different oral and written representations made to people over a long period of time, by its very nature is unsuitable as a class action. *See* Rule 23, Advisory Committee's Note, 39 F.R.D. 98, 103 (1966); *Simon v. Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 482 F.2d 880, 882 (5th Cir.1973); *Gilbert v. Woods Marketing, Inc.,* 454 F.Supp. 745, 750 (D.Minn.1978) (impressions created in oral discussions will be a part of each plaintiffs' case). *See also Gatzke v. Owen,* 69 F.R.D. 412, 416–17 (N.D.Miss. 1975), where the question of misrepresentation and fraud had to be determined separately for each plaintiff since individual class members were not induced by or exposed to common representations or course of conduct. The court noted further that such variations in defendant's conduct would necessarily individualize the fundamental question of plaintiffs' reliance on defendant's representations.

■ The record fails to show that in the determination of the class plaintiffs proved either that there were questions of

918

law or fact common to the class or that the claims or defenses of the representative parties were typical of the claims or defenses of the class. Plaintiffs could not have made such a showing. The relief afforded members of a class need not be uniform but the requisite commonality of fact or law must appear. *Crain v. Missouri State Employees' Retirement System,* 613 S.W.2d 912, 916 (Mo.App.1981). Further, variations in written material might have been remedied by subclasses, *see Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119 (Mo. banc 1979), but the problem caused by varying oral representations could not be cured. *Crasto v. Estate of Kaskel,* 63 F.R.D. 18, 23 (S.D.N.Y.1974). Although the trial court has wide discretion as to whether the case should proceed as a class action, *City of St. Peters v. Gronefeld,* 609 S.W.2d 437, 439 (Mo.App.1980), the requirements of the rule are mandatory. *City of O'Fallon v. Bethman,* 569 S.W.2d 295, 299 (Mo.App.1978). Plaintiffs have not met those requirements.

We therefore reverse the judgment for failure to make a submissible case of fraudulent misrepresentation and damages, and for failure to meet the Rule 52.08 requirements for a class action.

All Judges concur.