Stephen C. HABERSTICK, et al., Plaintiffs/Respondents/Cross–Appellants,

v.

GORDON A. GUNDAKER REAL ESTATE COMPANY, INC., et al., Defendants/Appellants/Cross–Respondents.

Nos. 67735, 67829.

Missouri Court of Appeals, Eastern District, Division Two.

April 16, 1996.

Louis J. Garavaglia, Jr., St. Ann, Alan N. Zvibleman, Richard A. Wunderlich, St. Louis, for appellants.

David L. Welsh, William Sitzer, Terry A. Parkinson, St. Louis, for respondents.

DOWD, Judge.

Gordon A. Gundaker Real Estate Company, Inc. (hereinafter "Gundaker") appeals the judgments for fraudulent misrepresentation in favor of seven of eight husband and wife plaintiffs (hereinafter "Buyers") who purchased property through Gundaker agents. Buyers cross-appeal the judgments entered on the directed verdicts granted in favor of Gundaker on their claims for fraudulent concealment. Married Buyers David E. Bartnicki and Anita Otal further cross-appeal the court's entry of judgment notwithstanding the verdict (JNOV) on their fraudulent misrepresentation claim. We affirm in part and reverse and remand in part.

Gundaker sold homes for commission in a newly developed residential subdivision called Turnberry Place. Brochures characterized Turnberry Place as "a park-like setting of rolling streets, woods and dramatic privacy. Half of Turnberry is common ground." A section of the common ground (which was set aside by the developers for the exclusive recreational use by Turnberry Place residents) lay between the private residential lots of Turnberry Place and Lot 843 owned by Martha Simmons. The Simmons lot is one portion of contiguous land known as the Bliss Ellisville site. A creek flows from the Bliss Ellisville and Simmons lot, through the common area and then bisects residential Turnberry Place. Each Buyer purchased a Turnberry Place home from a Gundaker agent with rear property lines abutting this wooded common area.

The entire Bliss Ellisville site was listed on the Missouri Department of Natural Resource's (MDNR) Confirmed Abandoned or Uncontrolled Hazardous Waste Sites Registry and on the Federal Superfund National Priorities List. It is surrounded by a six-foot-high fence with attached signs warning of toxic hazards. These warning signs were not visible from Turnberry Place through the flora of the common area. MDNR listed the Simmons lot separately from the other portions of the Bliss Ellisville site; however, both sites were designated Class I, signifying the sites were causing or presenting imminent danger of causing irreversible or irreparable damage to the public health or environment with immediate action required. *See* § 260.445.3(1), RSMo 1986. According to the MDNR, both the Simmons and Bliss sites contained pesticides, dioxin, oils and solvents and had unknown quantities of buried drums, waste in buried pits, and contaminated soil. The MDNR Registry reported "[e]rosion [of the Simmons lot] has washed contaminated soil downstream into the Caulks Creek tributary. There is a potential for groundwater contamination as long as the materials remain at the site." The report further warned "a serious threat to the public health exists due to the large amount of toxic chemi-

cal, the close proximity of residences to the site, the presence of known carcinogens, and the probability of movement of contaminants off-site via ground and surface water."

Agents selling Turnberry Place properties had been receiving inquiries from potential purchasers about the possible presence of dioxin. Gundaker management, along with Turnberry Place developers and home builders, held a meeting to develop a common strategy to confront these inquiries. They chose not to disclose the presence of the hazardous waste sites; rather, the sales agents were to respond to inquiries about dioxin by showing the potential purchaser three "Sitex" reports. The Sitex reports contained the results of chemical hazard testing of Turnberry Place. Although the scientifically worded Sitex reports were difficult for the lay person to comprehend, Gundaker interpreted the reports as giving Turnberry Place "a clean bill of health." Gundaker sales agents were to simply produce the Sitex reports even to questions explicitly about the hazardous waste sites and only if asked about potential chemical hazards. A Gundaker manager explained Gundaker did not want to "wave a flag" to potential buyers about the nature of "the property next door." An attorney consulted by Gundaker advised it was not obligated to disclose the sites. In subsequent meetings, Gundaker sales agents were instructed on this policy.

Buyers discovered the hazardous characteristics of the Simmons and Bliss sites only after purchasing their Turnberry Place homes. Buyer Christine Haberstick described the circumstances of this discovery:

> The very first time I had an incling [sic] that there was something wrong or something different about the area was I heard voices out my windows. When I looked out the window, I saw three or four people in space suits, moon suits, completely covered with big huge helmets all the way down to boots and gloves. They were carrying air breathing equipment and other types of equipment, I suppose, measuring equipment. . . . They were walking around our common ground area, The Turnberry common ground area. At that point, I walked away to find my kids because I didn't know where they were. . . .

Upon learning the proximity of the hazardous waste sites, they filed an action against Gundaker asserting, *inter alia*, fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation. The basis of the misrepresentation claims were statements made to them individually by Gundaker agents prior to purchase. Although the exact circumstances of each representation varied, each transaction was substantially similar. Gundaker agents provided Buyers with information about the amenities of the area surrounding Turnberry Place (e.g., school districts, location of grocery and retail stores, etc.). At some point during the sales process, Buyers inquired about the land constituting the Simmons lot/Bliss Ellisville site. The responses received varied, but no Buyer was told the land included a hazardous waste site. The Buyers were told that the Simmons lot was a farm; rural property; could not be developed; was inaccessible and could not be developed; farmland without access; and that it was owned by an old lady and would remain farmland. The agents did not provide Buyers with a copy of the Sitex report.

At the close of all evidence, the trial court granted Gundaker's motion for directed verdict as to the fraudulent concealment and negligent misrepresentation counts. The jury returned verdicts in favor of all the Buyers on the fraudulent misrepresentation counts and assessed actual and punitive damages against Gundaker. Gundaker motioned for JNOV on all counts of fraudulent misrepresentation, and the trial court entered a JNOV against Buyers David E. Bartnicki and Anita Otal.

■ In its first three points, Gundaker asserts the trial court erred in failing to grant its motions for JNOV as to all Buyers because there was insufficient evidence to support a fraudulent misrepresentation verdict. The elements of fraud are 1) a representation, 2) its falsity and 3) materiality, 4) the speaker's knowledge of its falsity or ignorance of its truth, 5) the speaker's intent that the representation be acted upon by the hearer in a manner reasonably contemplated,

6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the truth of the representation, 8) the hearer's right to rely thereon, and 9) injury to the hearer proximately caused by that reliance. *Wion v. Carl I. Brown & Co.,* 808 S.W.2d 950, 953 (Mo.App.1991). In determining whether a submissible case of fraud was presented, we view the evidence in the light most favorable to the verdict and disregard all inferences to the contrary. *Id.* "A judgment notwithstanding the verdict is proper only if upon such a view of the evidence, reasonable minds could not differ as to the proper verdict." *Id.*

Gundaker argues the evidence failed to establish its agents knew the falsity, or were ignorant of the truth, of the representations made. Gundaker contends that even if the evidence was sufficient to show the agents knew of the *existence* of the waste sites, no evidence supported finding either Gundaker management or its agents knew the *location* of the sites; therefore, the agents could not have known the falsity of their representations since they were unaware the Simmons lot was the waste site.

■ Gundaker misconstrues the theory of fraud submitted to the jury. The verdict directing instructions for fraudulent representation were not premised on the theory Gundaker agents knew the falsity of the representations. Rather, the knowledge element was satisfied if the jury found the agent "did not know whether the representation was true or false,...." Evidence that the Gundaker agents did not know the location of the sites supports the knowledge element submitted.

Kathy Smith was the Gundaker agent for the majority of Buyers, and she testified at trial. She stated her awareness the waste sites were in the proximity of Turnberry Place began with the meetings in which she was instructed to produce the Sitex reports upon inquiry about dioxin. Her knowledge of the sites was further shown by testimony of Buyers who confronted her upon learning the existence of the sites. According to this testimony, she said, "I understand you're upset about the hazardous waste site.... I'm sorry I didn't tell you. I thought I told

you about it ...," and "that she didn't think that it was important ... that she was following due diligence. It wasn't necessary for her to tell ... unless ... asked." She was uncertain when she learned the location of the sites, and she misidentified the locations on a map at trial. While Gundaker asserts its agents' professed ignorance of the location of the waste sites absolves it of fraudulent misdoing, it actually establishes the knowledge element in that the agents did not know whether the representations were true or false.

Gundaker relies on *Weaver v. Travers,* 631 S.W.2d 81 (Mo.App.1982). In *Weaver,* the plaintiffs brought suit against the proprietors of a termite inspection business for fraudulent misrepresentation alleging they detrimentally relied on defendants' false inspection report of their home. In the report, defendants represented that, after a thorough inspection, they found no termites and only "some damage" to a bay window. We affirmed the directed verdict in favor of the defendants because the evidence failed to satisfy the knowledge element of fraudulent misrepresentation. Specifically, we held the evidence adduced was consistent with defendants negligently inspecting the home and being unaware of the termite damage that existed. Here, the evidence was sufficient to show Gundaker and its agents were aware hazardous waste sites were in the Turnberry Place vicinity. The evidence further supports the agents, ignorant of the precise location of the waste sites, made representation of the sites without regard to the known potential the land being described was a waste site. In these circumstances, ignorance of the location of the sites is not consistent with mere negligence. Rather, the ignorance coupled with the disregard of the known hazard of the surrounding area demonstrates an act of fraudulent malfeasance. Point denied.

■ Next, Gundaker argues the representations made by its agents were too vague to support a fraud action and that the representations were not shown to be false. For the former argument, Gundaker relies on *Grosser v. Kandel–Iken Builders, Inc.,* 647 S.W.2d 911 (Mo.App.1983). In *Grosser,* the plaintiffs asserted a claim of fraud against

the builders of a subdivision because the builders allegedly fraudulently promised to build a common-use swimming pool. We noted that for a promise to be the basis of a fraud claim, it must be shown that the representations made were reasonably interpretable as expressing a firm intention of performing the promise. *Id.* at 914. The only uniform representation made to the *Grosser* plaintiffs was contained in a brochure stating a swimming pool was a "feature" of the subdivision without any indication as to its size, location, means of maintenance, or ownership. *Id.* at 915. We held this representation was too vague and abstract to support a fraudulent promise claim because the court would have to guess at its "precise nature." *Id.*

The meaning of representations, their truth or falsity, are to be made "in the light of the meaning which the plaintiffs would reasonably attach to them in existing circumstances and the words employed must be considered against the background and in the context in which they were used." *Toenjes v. L.J. McNeary Construction Company,* 406 S.W.2d 101, 105 (Mo.App.1966) (citations omitted). "A misrepresentation may be made by conduct calculated to mislead and to fraudulently obtain an undue advantage." *Bedell v. Daugherty,* 242 S.W.2d 572, 575 (Mo.1951).

Here, sufficient evidence showed Gundaker and its agents were aware of the nearby waste sites and that the proximity of the waste sites may be a material fact to potential buyers. The evidence further supports Gundaker agents were aware inquiries by Buyers about the area surrounding Turnberry Place were intended to discover such material facts. Under the circumstances and in the context of the representations, the evidence supports the finding the Gundaker agents, pursuant to the policy of Gundaker management, falsely represented the nature of the surrounding area in a manner calculated to deceive Buyers and obtain an undue advantage over them. The representations were not too vague or abstract—they were misleading representations of existing fact and not speculative promises of future action.

Similarly, we find error in the court entering a JNOV on the fraudulent misrepresentation claim of Buyers Bartnicki and Otal. A JNOV is proper only where the evidence and inference to be drawn therefrom viewed in the best light for the non-moving party could not permit reasonable minds to differ about the verdict. *Wion,* 808 S.W.2d at 952–53. The evidence of fraud was essentially the same for Bartnicki and Otal as the other Buyers except for the allegedly false representations made. Testimony was that when Bartnicki and Otal asked Kathy Smith about the area surrounding Turnberry Place she informed them of the Zick property (a nearby landscaping nursery) and said the rest of the surrounding area was "either common ground or other subdivisions." Bartnicki and Otal also expressed concern about the dioxin problems in a nearby subdivision called Castlewood. Kathy Smith responded that "the values were better at Turnberry" than Castlewood. Under the circumstances and context of the representations, we hold the evidence of misrepresentation was as strong as the evidence supporting the judgments of fraud for the other Buyers. The trial court erred in entering a JNOV, and we remand directing the trial court to enter a judgment consistent with the verdict rendered. We affirm the judgments for fraudulent misrepresentation as to the other Buyers.

In its fourth point on appeal, Gundaker alleges error in actual damage instructions submitted to the jury. These instructions were patterned after MAI 4.03 and appeared to comply with the Notes on Use.[1] Gundaker offers a strained reading of the instructions to argue prejudice resulted from the failure to identify the "property" referenced in the instructions. Gundaker did not object to these instructions on this basis prior to submission nor did it offer modified instructions "correcting" the alleged ambiguity. "We will not reverse for instructional

---

1. These instructions read:
 If you find in favor of the Plaintiffs [Plaintiffs' names in original], then you must award Plaintiffs [Plaintiffs' names in original] such sum as you believe was the difference between the actual value of the property on the date it was sold to Plaintiffs [Plaintiffs' names in original] and what its value would have been on that date had the property been as represented by [sales agent(s) named in original].

error unless prejudice is shown. Failure to object at trial may be considered in assessing prejudicial effect. A jury is not likely to be misled by an alleged defect in an instruction when the defect was not readily apparent to trial counsel." *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 748 (Mo.App.E.D. 1993) (citations omitted). Even assuming the submitted instructions failed to comply with the MAI, the instructions, read in their ordinary context, present no real possibility of prejudice to Gundaker. The actual damages awarded pursuant to the instructions do not evidence a realization of whatever possibility of prejudice may have existed. Point denied.

 In its last four points, Gundaker asserts error in the submission of the punitive damage instructions to the jury. Gundaker's assertions are without merit. Actual damages were found; therefore the award of punitive damages was not foreclosed. *See Frederic v. O'Keefe,* 820 S.W.2d 107, 109 (Mo.App.1991). The award of punitive damages was supported by sufficient evidence of a culpable mental state. *See Burnett v. Griffith,* 769 S.W.2d 780, 787 (Mo. banc 1989). The punitive damage instructions submitted were appropriately and properly patterned after MAI 10.01 which we have found not to violate due process. *Carpenter v. Chrysler Corp.,* 853 S.W.2d 346, 365–66 (Mo.App.E.D. 1993). Points denied.

The remainder of Buyers' cross-appeals have been rendered moot by the above holdings. Specifically, the court's directed verdict on Buyers' fraudulent concealment claims need not be reviewed because the asserted damages have been determined and awarded under the fraudulent misrepresentation judgments. We find no basis under the law for remanding, as Buyers argue, to allow the jury to reassess punitive damages under the fraudulent concealment claim.

We reverse and remand the trial court's entry of JNOV as to Bartnicki and Otal, and affirm in all other respects.

CRAHAN, P.J., and PUDLOWSKI, J., concur.