**TERRE DU LAC ASSOCIATION, INC., Plaintiff-Appellant,**

v.

**TERRE DU LAC, INC., Terre Du Lac Golf and Country Club, Inc., Terre Du Lac Country Club Associates, C.I.T. Corporation Sensibar Enterprises, Inc., Moill, Ltd., James O. Kwon, David Sensibar, Ezra Sensibar, George Sensibar and Jack Goldfarb, Respondents-Defendants.**

No. 52223.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 28, 1987.

Motion for Rehearing and/or Transfer
Denied Sept. 2, 1987.

Application to Transfer Denied
Oct. 13, 1987.

Jeffrey Pratt, Registered Agent, Farmington, Kenton E. Knickmeyer, Robert H. Brownlee, Thompson & Mitchell, St. Louis, for plaintiff-appellant.

William J. Garmisa, Mitchell S. Goldgehm, Nathan H. Lichtenstein, Greenberg, Keele, Lunn & Arnonberg, Chicago, Ill., Donald L. James, Michael M. Flavin, Brown, James & Rabbitt, P.C., Maxine I. Lipeles, Joseph P. Conran, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, John W. Reid, II, Schnapp, Graham & Reid, Fredericktown, David S. Limbaugh, Limbaugh & Payne, Cape Girardeau, for respondents-defendants.

CRANDALL, Judge.

Plaintiff, Terre Du Lac Association, Inc., appeals the trial court's dismissal of its petition on motions of defendants. We affirm in part and reverse and remand in part.

Preliminarily, we note the named parties as described in plaintiff's petition. Plaintiff, Terre Du Lac Association (Association), is a Missouri not-for-profit corporation, whose members are owners of lots in "Terre Du Lac" (Development), a private recreational, lake-centered land development. The duties of Association are to own, operate, manage, and maintain certain facilities and common areas located within the Development. Pursuant to restrictive covenants in the deeds, every lot owner in the Development is required to become a member of the Association. Association presently has about 4,000 members.

Defendant, Terre Du Lac, Inc. (TDL), is the developer of the project.[1] TDL owns the real property in the development which is not owned either by Association or by its members. Other defendants are: Sensibar Enterprises, Inc. (Sensibar), the corporation which acquired the stock of TDL in 1977, after TDL went through Chapter XI bankruptcy proceedings; Terre Du Lac Golf and Country Club, Inc. (Country Club, Inc.); Terre Du Lac Country Club Associates (Country Club Associates), which "claims to be a limited partnership, and in any event, is a partnership. . . ."; Moill, Ltd., a corporation and general partner of Terre Du Lac Country Club Associates; and C.I.T., a corporation which financed the Terre Du Lac development. The individually named defendants are David Sensibar, Ezra Sensibar, George Sensibar, Jack Goldfarb, and James Kwon; all of whom are "partners, who claim to be limited partners. . . ." in Country Club Associates. James Kwon is also president of TDL; an officer and director of TDL and of Moill, Ltd.; and an officer, director, and shareholder of Country Club, Inc.

---

1. In its petition, Association used the term "Developer" as a generic term to identify all defendants.

Before we define and discuss the substantive issues raised in this appeal, we first determine our standard of review. *Stix & Co., Inc. v. First Mo. Bank & Tr. Co. of Creve Coeur*, 564 S.W.2d 67, 68 (Mo.App.1978). The pertinent facts are that Association filed a petition in the Circuit Court of St. Francois County, Missouri, "on its own behalf, and for the benefit of all of its members." Defendants, TDL and James Kwon, filed a joint motion to dismiss Association's petition for failure to state a claim for which relief can be granted. The motion alleged that Association did not have the majority approval of its membership to proceed with the action. It further claimed that the action was barred (1) by the res judicata effects of the dismissal by the United States Court of Appeals for the Eighth Circuit of another action between the same parties, (2) by TDL's 1976 reorganization in bankruptcy, and (3) by the applicable statute of limitations.

Defendants, Country Club, Inc., Country Club Associates, Moill, Ltd., Sensibar, Ezra Sensibar, George Sensibar, David Sensibar, and Jack Goldfarb, filed a motion to dismiss which adopted the allegations contained in TDL and Kwon's motion to dismiss. In addition, they alleged that Association had failed to state a claim against Sensibar because it did not allege sufficient facts to support its conclusion that Sensibar was the alter ego of any other named corporate defendant. C.I.T. corporation filed a motion to dismiss which raised res judicata, as well as the failure to join the individual purchasers of the lots as indispensable parties to the action and the failure to plead facts sufficient to support its conclusion that C.I.T. was engaged in a joint venture with developer. Defendants, TDL and James Kwon, then filed a motion for summary judgment supported by exhibits. After the parties filed a barrage of memoranda of law either in support of or in opposition to the pending motions, the motions to dismiss were argued and taken under advisement. The trial court then sustained what it styled as "Defendants' Motions to Dismiss."

On appeal, TDL and James Kwon urge this court to treat the motion before the trial court as one for summary judgment. Country Club, Inc., Country Club Associates, Sensibar, Moill, Ltd., David Sensibar, Ezra Sensibar, George Sensibar, and Jack Goldfarb, adopt the brief of TDL and Kwon, thereby concurring with the position that the motion was for summary judgment. Association and C.I.T., however, look only to the petition, thereby indicating that they view the trial court's ruling as one sustaining a motion to dismiss.

The characterization of the trial court's ruling by the parties is muddled. It is unclear from the voluminous documents before this court what precisely was before the trial court when it ruled on defendants' motions. We acknowledge that, if matters outside the pleadings were presented and not excluded by the trial court at the hearing on the motions to dismiss Association's petition and all parties had an ample opportunity to present materials on the issue of summary judgment, the trial court in effect entered summary judgment when it ruled on defendants' motions to dismiss. *See* Rule 55.27(b); *see also Boyer v. Carondelet Sav. & Loan Ass'n*, 633 S.W.2d 98, 100 n. 2 (Mo.App.1982).

■ Here, several factors combine to militate against treating the trial court's ruling as a ruling on a motion for summary judgment. It is not readily apparent from the record that either the parties or the trial judge treated defendants' motions as motions for summary judgment. There is no evidence of compliance with the notice requirement of Rule 55.27(a). Generally, some indication by the court to all parties that it is treating a motion to dismiss for failure to state a claim as a motion for summary judgment is required. *Kipper v. Vokolek*, 546 S.W.2d 521, 524 (Mo.App. 1977). *But see Johnson v. Raban*, 702 S.W.2d 134, 136 (Mo.App.1985).

■ There is nothing in the record which suggests that the trial court considered anything other than the petition itself when it ruled on the motions to dismiss. The record merely discloses that defendants, TDL and Kwon, filed a motion for summary judgment which was never taken up.

Further, on appeal, the parties are not even in agreement as to the nature of the trial court's ruling. Accordingly, we review the trial court's ruling as a grant of defendants' motions to dismiss.

Our scope of review for a motion to dismiss requires an examination of the pleadings, allowing them their broadest intendment, treating all facts alleged as true, construing allegations favorably to plaintiff, and determining whether the petition invokes principles of substantive law. *Lipton Rlty. v. St. Louis Housing Authority,* 705 S.W.2d 565, 568 (Mo.App.1986). A petition is not to be dismissed for failure to state a claim unless it appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *American Drilling Service Co. v. City of Springfield,* 614 S.W.2d 266, 271 (Mo.App. 1981) (citations omitted). If a pleading merely lacks sufficient particularity, it may be subject to a motion for a more definite statement. Rule 55.27(d).

Here, the trial court sustained defendants' motions to dismiss without specifying the reason for its ruling. On appeal, we presume the dismissal was on one or more of the grounds specified in defendants' motions. *Lipton Realty,* 705 S.W.2d at 568. We affirm the order of the trial court if any grounds asserted for dismissal are valid. *Iverson v. Crow,* 639 S.W.2d 118, 119 n. 2 (Mo.App.1982).

The facts alleged in plaintiff's petition which are common to all counts are that Developer represented to the purchasers of lots within the Development the following: that Country Club, Inc. and Country Club Associates were responsible for the maintenance and operation of the country club facilities until they were transferred to Association; that all roads would be permanently surfaced with asphalt over a stabilized base; and that all amenities would be transferred to Association free and clear of all encumbrances. These representations were made in advertisements and orally by salespersons who worked under the supervision of Kwon, who was "under the direct influence and control of Sensibar." Developer has not, however, completed construction of the asphalt roads as specified; many are only surfaced with gravel. Developer has conveyed only a portion of the roads to Association. Association has refused to accept the conveyance of those roads which are not paved with an asphalt surface over a stabilized base. In 1983, Developer notified Association that it would no longer maintain certain roads owned by it. As a result, the roads have deteriorated and the United States Postal Service has given notice that postal delivery may be interrupted. Developer has failed to transfer substantial portions of the common ground and amenities to Association, including the golf and country club facilities. Association also believes Developer has sold the golf and country club to third persons.

In Count I, Association seeks to enforce the promises and representations made by Developer to the individual members of the Association; namely, to pave the roads, to convey title to the golf and country club facilities, and to transfer the common areas and amenities to Association. Count II seeks a declaration of the respective rights and obligations of Association and Developer relative to the construction and maintenance of the roads in the Development. Count III is for Developer's breach of its express agreement with Association to provide water sufficient to maintain the pool level of Lac Renee, a lake in the Development. Count IV seeks a declaratory judgment that Association, pursuant to its By-Laws, has the right to amend the By-Laws without seeking the approval of Developer's board of directors.

We consider this appeal in terms of whether defendants presented sufficient reasons to the circuit court to dismiss Association's action without a trial. This approach is particularly appropriate in this appeal, where there are no findings of fact or conclusions of law and we assume that the motions were granted on the basis of the grounds raised by defendants in those motions. We therefore consider the defendants' points on appeal separately.

## DEFENDANTS, TDL AND JAMES KWON

Defendants, TDL and Kwon first assert that the trial court correctly dismissed Association's petition because "the United States Eighth Circuit Court of Appeals has held that Association does not have representational standing to bring any claims on behalf of its members against [defendants] and said judgment is final and non-appealable and is the law of the case and constitutes res judicata."

Initially, we note that res judicata is an affirmative defense which may be raised in a motion to dismiss if the action would be rendered groundless by uncontroverted facts. *Raban,* 702 S.W.2d at 136. It is, in essence, an allegation that plaintiff has failed to state a claim upon which relief may be granted. *Id.; see also* Rule 55.-27(a)(6). When the motion to dismiss is predicated on res judicata, the trial court may take judicial notice of the prior judgment.

Res judicata principles encompass both claim preclusion, which prohibits the same parties from relitigating the same cause of action, and issue preclusion, which forbids the same parties from relitigating issues previously adjudicated. *Ste. Genevieve County v. Fox,* 688 S.W.2d 392, 395 (Mo.App.1985). The doctrine of res judicata provides that, where two actions are on the same cause of action, the earlier judgment is conclusive not only as to matters actually determined in the prior action, but also as to other matters which could properly have been raised and determined therein. *Castle v. Tracy,* 463 S.W.2d 777, 780 (Mo.1971). Where a second action is upon a claim, demand, or cause of action, different from a prior action, the judgment in the first action does not operate as an estoppel as to matters not litigated in the former action. *Id.* In order for a party to be barred under traditional res judicata, the cause of action in the new litigation must be identical to the earlier cause of action. *Oberle v. Monia,* 690 S.W.2d 840, 842 (Mo.App.1985).

The pertinent facts are that Association filed a sixteen count complaint in federal court. Counts one through six were based on the Interstate Land Sales Full Disclosure Act (Land Sales Act), 15 U.S.C. Section 1701–1720, for Developer's failure to fulfill promises and representations regarding the roads and amenities. The district court dismissed Association's claims under the Land Sales Act "without prejudice to the right of any individual members to seek relief on their own behalf." *Terre Du Lac Ass'n., Inc. v. Terre Du Lac, Inc., et. al.,* 601 F.Supp. at 257, 261 (E.D.Mo.1984). The district court reasoned as follows: (1) some of the Land Sales Act counts required proof of reliance, which proof would necessitate testimony by individual members; and (2) there was potential conflict among the members necessitating individual representation of their interests. *Id.* at 260. The court also dismissed without prejudice Association's pendent state law claims premised upon breach of contract and fraud theories.

The Court of Appeals for the Eighth Circuit upheld the dismissal. *Terre Du Lac Ass'n., Inc. v. Terre Du Lac, Inc., et al.,* 772 F.2d 467 (8th Cir.1985). The court, however, did not adopt the district court's reasoning. It specifically stated: "In our view, the Association lacks associational standing due to the fact that the type of relief available under the Land Sales Act, 15 U.S.C. Section 1709(a), requires individualized proof of the claims asserted." *Id.* at 471. The court concluded:

First, in order to establish a right to relief, the Association would have to submit evidence relating to each purchase of a subdivision lot in order to establish that the purchaser had a viable Land Sales Act claim. Second, in order to establish the amount of relief due, the Association would have to submit evidence relating to the cost and current value of each lot, as well as evidence relating to the amount by which the defendants' Land Sales Act violations diminished this value. Clearly, the need for such individualized proof renders the Association an inappropriate vehicle to bring the Land Sales Act claims of its members.

*Id.*

The opinion of the Eighth Circuit Court of Appeals was narrowly focused.

It held that Association did not have standing to pursue its members' claims under the Land Sales Act. The holding is simply that, under that particular statute, the need for individualized proof from each purchaser is such that Association is not the proper party to bring the action.

It is clear that the cause of action brought in federal court is not identical to the present action brought in state court. The instant suit is based upon common law breach of contract and fraud theories. Association seeks the rendition of a declaratory judgment and specific performance. Although the two claims have many features in common, similarity is not enough to justify the application of res judicata. Further, the Eighth Circuit specifically dismissed the state claims without prejudice. Association is therefore not barred from bringing this action in state court.

Defendants next assert that Association is only an incidental beneficiary of the contracts between the individual purchasers and therefore lacks standing to pursue Counts I and II. Association counters that it has standing as a third party beneficiary to enforce the purchase contracts.

In Counts I and II of its petition, Association seeks a declaratory judgment that it can enforce Developer's promises. It alleges that Developer made promises regarding the roads, country club, golf course, and common areas to prospective buyers; and that these representations induced the purchase of the lots. It contends that, "as the intended beneficiary of the promised transfer of the completed roads, amenities, and common areas, [it] is entitled to enforce the Developer's promises and representations."

■ A third party beneficiary is one who is not privy to a contract or its consideration but one to whom the law gives the right to maintain a cause of action for breach of contract. *Laclede Investment Corp. v. Kaiser*, 596 S.W.2d 36, 41 (Mo. App.1980). Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action. *Id.* "The intention of the parties is to be gleaned from the four corners of the contract, and if uncertain or ambiguous, from the circumstances surrounding its execution." *Id.* Third party beneficiary rights depend on, and are measured by, the terms of the contract between the promisor and the promisee. Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a *direct obligation* to him. *Id.* at 41–42. Although it is not necessary that the third party beneficiary be named in the contract, the terms of the contract must express directly and clearly an intent to benefit an identifiable person or class. *Id.* at 42.

■ Missouri has adopted the classification of beneficiaries found in the Restatement of Contracts Section 133 (1932). *Id.* A person is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance thereof is "to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary." Section 133(1)(a). The person is a creditor beneficiary if the "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." Section 133(1)(b). Finally, a person is an incidental beneficiary if he is neither a donee nor a creditor beneficiary. Section 133(1)(c). The first two classes of beneficiaries may recover; the third class may not.

■ In the present situation, if Association can recover, it does so as a donee beneficiary. The purchasers of the lots, as part of the consideration for entering into the sales contract, had a promise from Developer to render a stated performance to Association; namely, that permanently surfaced roads and certain common areas would be transferred to Association. The purchasers intended to confer these benefits upon the Association of which they would automatically be members.

Association is therefore a donee beneficiary and is entitled to sue Developer to enforce the contracts with its members.

The performance regarding the roads and common elements of the Development was to be rendered directly to and for the benefit of Association. The members' only purpose was to confer a gift upon Association. Association, then, satisfies the requirements for third party beneficiary status. The petition adequately pleaded that Association was the intended beneficiary of the purchase agreements between Developer and the individual members of the Association.

In *Summerhouse Condominium Ass'n., Inc. v. Majestic Savings & Loan Ass'n.*, 44 Colo.App. 495, 615 P.2d 71 (1980), the court upheld the dismissal of a condominium association's action against developers and sellers of the condominium units for breach of fiduciary duty. The court denied the association standing as the third party beneficiary of the contracts entered into between developers and buyers. The trial court did not permit the association to assert the claim on behalf of its members that developers and sellers had made representations to "many of the association members," which representations became part of the purchase agreements. The trial court reasoned "the Association [had] not alleged *any direct benefit conferred upon it by the purchase agreements....*" *Id.* 615 P.2d at 73 (emphasis added).

The *Summerhouse* case is distinguishable from the instant case in that the petition before this court states that Association is the "intended beneficiary of the promised transfer of the completed roads, amenities, and common areas...." Here, Association has alleged a direct benefit to itself; i.e., the transfer to it of the roads and common areas. Pursuant to the purchase agreements, the property which Association seeks is within the category of property devoted to the common use and enjoyment of all owners and not within the category of property owned by the individual owners. The Articles of Incorporation of the Association and the By-Laws specify that Association is organized "for the purpose of acquiring, owning, maintaining, and operating common areas and facilities" located within the Development. Association's claims allege a direct benefit to it and are not of such an individualized nature as to prevent Association from suing on behalf of its members collectively.[2]

Defendants rely on *Grosser v. Kandel-Iken Builders, Inc.*, 647 S.W.2d 911 (Mo.App.1983) to support their position that Association lacks standing. In *Grosser*, this court held that the lot owners in a subdivision did not meet the requirements for a class action which was based on the false representations made to some of them about building a swimming pool. The court concluded: "A fraudulent misrepresentation case, involving a 'diversified' promise consisting of different oral and written representations made to people over a long period of time, by its very

2. Other jurisdictions have recognized that an owners association, on behalf of its members, is the proper party to bring an action for damages pertaining to the common areas. *See, e.g., Stoney Ridge Hill Condominium Owners Ass'n. v. Auerbach,* 64 Ohio App.2d 40, 410 N.E.2d 782 (1979) (for damages caused by leaky condominium roof which was held in common by owners); *Briarcliffe West Townhouse Owners Ass'n. v. Wiseman Constr. Co.,* 118 Ill.App.3d 163, 73 Ill.Dec. 503, 454 N.E.2d 363 (1983) (for breach of implied warranty of fitness of common land in which homeowners possessed easements); *Towerhill Condominium Ass'n. v. American Condominium Homes, Inc.,* 66 Or.App. 342, 675 P.2d 1051 (1984) (for defects in the common elements of the condominium based upon theories of negligence and breach of warranties contained in sales agreements); *Dockside Ass'n., Inc. v. Detyens, Simmons and Carlisle,* 285 S.C. 565, 330 S.E.2d 537, *aff'd as modified,* 287 S.C. 287, 337 S.E.2d 887 (1985) (for defects in the common elements which association had a duty to maintain); *1000 Grandview Ass'n., Inc. v. Mt. Washington Assoc.,* 434 A.2d 796 (Pa.Super. 1981) (for defects and omissions in construction of common areas). In *1000 Grandview,* the court stated:

> The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Id.* at 797 (citations omitted).

nature is unsuitable as a class action." *Id.* at 917.

The *Grosser* case is not dispositive of the issues raised in the present action. Here, Association is not seeking money damages for fraudulent misrepresentation, but is seeking a declaratory judgment that it has the power to enforce certain obligations which Developer owes to it. The rights which Association claims in specific amenities and in the roads, once established, will be held in common by all members. Association is therefore protecting the common rights of its members and not those rights which are of an individualized nature. Having this collective character, the rights are ones which Association has the authority to assert.

Further, this is not a situation where an award of damages is sought by an association on behalf of its members, as in *Grosser.* The present action will not require the individualized proof of specific representations made by Developer to the individual purchasers and of damages the individual lot owners sustained as a result of these misrepresentations. It also will not be necessary for the court to specify the amount to be awarded each recipient to avoid discord within the association and to prevent further litigation.

Defendants' argument that Association lacks standing is untenable for practical considerations as well. Two interests are conveyed in a condominium or in a home located within a home owners association development: a dwelling on one hand and a proportionate share of the common elements on the other. *Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations,* 12 Wake Forest L.Rev. 915, 961 (1976). Frequently, the common amenities are highlighted in the developer's marketing and sales program. The common elements, however, present unique problems. *Id.* The first problem is that many owners buy into a development at a stage when much of the construction of the common elements is unfinished. *Id.* The second problem is the sheer size and complexity of the investigation which would be required

to assure an individual owner that the common areas are complete and fit for the use for which they were intended. *Id.*

In this context, the condominium or home owners association takes on a critical role as a representative of the individual owners. There are two distinct roles of the association: managerial or service-oriented functions, and quasi-governmental or regulatory functions. *Id.* at 917–918.

> [O]ne clearly sees the association as a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government. As a 'mini-government,' the association provides to its members, in almost every case, utility services, road maintenance, street and common area lighting, and refuse removal. In many cases, it also provides security services and various forms of communication within the community. There is, moreover, a clear analogy to the municipal police and public safety functions. All of these functions are financed through assessments or taxes levied upon the members of the community, with powers vested in the board of directors, council of co-owners, board of managers, or other similar body clearly analogous to the governing body of a municipality.

*Id.* at 918 (footnotes omitted).

Membership in an association is usually mandatory. Such is true in the present case.

> By his acceptance, the purchaser automatically becomes a member of the association created by the declaration and submits to the authority of the association and to the restrictions upon the use and enjoyment of the property contained in the declaration. Because each owner automatically becomes a member of the association upon taking title and because the association is empowered to levy and to collect assessments, to make and to enforce rules, and to permit or to deny certain uses of the property, the association has the power, and in many cases the obligation, to exert tremendous influence on the bundle of rights normally

enjoyed as a concomitant part of fee simple ownership of property.

*Id.* at 917.

As a result, the powers of an association are extensive with regard to enforcing the common rights of all owners. An association performs what is essentially a governmental function. The prospective purchaser of either a condominium unit or of a lot in a home owners association development looks to the association for collective action to protect his interest in the common elements. The time and expense connected with acquiring and maintaining the common elements would be prohibitive for the average buyer. A potential buyer would be wary of purchasing property if the association did not possess such powers.

Association was the proper party to bring an action to enforce the purchase contracts between its members and Developer pertaining to the common elements and roads.

█ In their third point, defendants claim that "Association is precluded from bringing any action it has on its own behalf as alleged in Counts I, II, and IV of its petition because it failed to file a claim based on said claims with the federal bankruptcy court...." In their fourth point, defendants allege that Association is barred by the statute of limitation on any claim against Developer relating to its Bylaws. In their fifth point, defendants assert that Association cannot maintain the cause of action alleged in Count III of its petition regarding the conveyance of the lakes because the conveyance calls for binding arbitration to settle disputes between the parties.

As previously indicated, we are reviewing the trial court's ruling as a ruling on a motion to dismiss, which means we look to plaintiff's petition. These three allegations concern matters which would have necessitated the trial court's consideration of matters outside of the pleadings, which is appropriate only in a motion for summary judgment.[3] These grounds were not prop-

erly raised in a motion to dismiss. *See* Rule 55.27(a). Accordingly, we decline to consider them on appeal.

█ In their sixth point, defendants claim that Association has not alleged in its appeal that the trial court abused its discretion in refusing to exercise jurisdiction for declaratory relief. Defendants rely on Rule 87.07 which provides: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Defendants argue that Association's claims for declaratory judgment are subject to dismissal in the absolute discretion of the trial court.

The record before us does not support defendants' position. In response to Association's petition, defendants filed a motion to dismiss for failure to state a cause of action upon which relief can be granted. Nowhere in the motion did defendants urge the court not to exercise its discretion to enter declaratory relief. Because we presume that the motion to dismiss was sustained on the basis of the grounds stated in the motion, the record is clear that the trial court did not exercise its discretionary power in dismissing Association's claims. The trial court erred in sustaining the motion to dismiss of defendants TDL and James Kwon.

### DEFENDANT, C.I.T.

Defendant, C.I.T., is the principal lender for the Terre Du Lac project. C.I.T. alleges that the trial court correctly dismissed Association's claims against it for the reason that the petition does not adequately plead that C.I.T. was engaged in a joint venture with Developer. C.I.T. alleges that a joint venture requires a community of interest in the accomplishment of a common purpose, a mutual right of control, a right to share in the profits, and a duty to share in the losses. *U.S. Fidelity & Guaranty Co. v. Houf,* 695 S.W.2d 924, 928

---

**3.** We note that a statute of limitation question may be decided on a motion to dismiss if the petition pleads facts which clearly indicate that the action is barred by the applicable statute of limitation. This is not the situation in the case before us.

(Mo.App.1985). C.I.T. contends that the petition fails to allege two essential elements to prove a joint venture: community of purpose and duty to share in losses.

█ A joint venture is a type of partnership. *Stram v. Miller*, 663 S.W.2d 269, 277 (Mo.App.1983). As such, it is governed by Missouri's Uniform Partnership Act. Section 358.070 RSMo (1986). That Act provides in pertinent part:

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but *no such inference shall be drawn if such profits were received in payment:*

    \*    \*    \*    \*    \*    \*

(d) *as interest on a loan,* though the amount of payment vary with the profits of the business.

Section 358.070(4)(d) (emphasis added).

█ Generally, the absence of a specific allegation in the petition as to how profits and losses are to be shared by the parties does not constitute a fatal defect in the petition. *Fish v. Fish*, 307 S.W.2d 46, 51 (Mo.App.1957). An agreement to share losses can be inferred from an agreement to share profits.

█ Here, Association pleaded that C.I.T. was the principal financier and lender for the Development. Where a debtor-lender relationship exists, an agreement to share profits cannot automatically give rise to an inference that there is a concomitant agreement to share losses. Association's petition does not characterize the profits to be received by C.I.T. as "interest." Yet, because of C.I.T.'s role as the lender for the project, it can reasonably be assumed that the profits were received in payment as interest on a loan. *See* Section 358.-070(4)(d). Further, it is immaterial that the amount of the payments received by C.I.T. will vary with the profits received by defendants. *See Id.*

█ C.I.T.'s receipt of a share of the profits does not raise the inference that C.I.T. is engaged in a joint venture with the other defendants. To plead a joint venture in debtor-lender, it is imperative to also plead that those parties specifically agreed to share the losses. Because Association's petition failed to plead that C.I.T. shared in the losses, the trial court properly dismissed Association's action against C.I.T. for failure to state a claim upon which relief can be granted. In view of our holding, we need not address the other issues relating to C.I.T.

### DEFENDANTS, COUNTRY CLUB, INC., COUNTRY CLUB ASSOCIATES, SENSIBAR, MOILL, LTD., DAVID SENSIBAR, EZRA SENSIBAR, GEORGE SENSIBAR, AND JACK GOLDFARB.

In their first point, these defendants "adopt as their own all points and authorities and all arguments" made in the briefs of defendants, TDL and Kwon and C.I.T. Those issues have been determined. We refer the parties to our discussion above.

In their second point, defendants allege that Association has failed to link any of the individually named defendants to any wrongful conduct and has not properly pleaded that Sensibar is the alter ego of all the corporate defendants, excluding C.I.T. Defendants assert that Association's allegation is a mere conclusion without "any allegation of overt conduct committed by any of them."

We first address the individual defendants. The pertinent facts are that Paragraph 5 of Association's petition reads as follows: "[Country Club Associates] claims to be a limited partnership, and, in any event, is a partnership doing business within the State of Missouri." In Paragraph 7, Association alleges the following: "The partnership's other partners, who claim to be limited partners, are the five individual defendants, James O. Kwon David Sensibar, Ezra Sensibar, George Sensibar and Jack Goldfarb."

█ An action cannot be brought against the partnership in the firm name, but rather, must be brought against the individual partners. *Baum v. Glen Park Properties*, 660 S.W.2d 723, 725 (Mo.App. 1983). "[A] limited partner is not liable for

the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Section 359.201 RSMo (1986).

The petition before us is imprecise. It is not clear from the petition whether Country Club Associates is a partnership or limited partnership. It is equally unclear whether the individual defendants are general partners or limited partners; or, if they are limited partners, whether they have engaged in activities inconsistent with that status and consistent with the status of a general partner. Association's petition merely states that the individual defendants are partners who "claim" to be limited partners.

This allegation, construed favorably to Association, is sufficient to plead the partnership status of the individual defendants. As general partners, under Missouri law they are proper party defendants. Association has pleaded sufficient facts to state a cause of action against the individual defendants and to withstand a motion to dismiss.

We next address the issue of whether Sensibar is the alter ego of the other corporate defendants. Ordinarily, two separate corporations are to be regarded as wholly distinct legal entities, even though the stock of one is owned partly or entirely by the other. *Liberty Financial Management Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 52 (Mo. App.1984). The mere fact of ownership and control does not of itself authorize piercing the corporate veil. *Id.* The question is whether the corporations are being manipulated through their interrelationship to cause illegality, fraud, or injustice. *Id.* The test for piercing the corporate veil is therefore two-pronged: first, the corporation must be controlled and influenced by persons or by another corporation; second, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud. *Fair-*

*banks v. Chambers*, 665 S.W.2d 33, 37 (Mo. App.1984).

In Paragraphs 31 through 36 of its petition, Association alleges that Sensibar acquired a "controlling portion" of the outstanding stock, that Sensibar has "directly or indirectly controlled and influenced the activities" of all the corporate defendants other than C.I.T., and that Sensibar "was held out to the Association and the public generally ... as the controlling force behind TDL." These allegations of fact are sufficient to satisfy the first requirement for piercing the corporate veil—unity of interest and ownership.

In Paragraphs 51 through 55 of its petition Association alleges the following: that the staff of TDL "has operated under the direct supervision and control ... of Sensibar"; that salespersons represented to prospective purchasers of lots that all roads "would be surfaced with a permanent asphalt surface" and that amenities within the development "would be transferred to the Association free and clear of all liens and encumbrances"; and that Developer has not paved the roads with asphalt but has surfaced many "only with gravel." In Paragraph 63 of its petition, Association alleges that Developer has failed to transfer to Association "substantial portions of the grounds and amenities of the Development, including ... the country club facilities and the golf courses...." These allegations of fact are sufficient to satisfy the second requirement for piercing the corporate veil; namely, sanctioning fraud or promoting injustice.

Here, Association's factual allegations are sufficient to support its claim for relief and to inform Sensibar of the nature of the action. *See, e.g., Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 856 (Mo. App.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2903, 90 L.Ed.2d 989 (1986). This is not a situation where Association has made a wholly unsupported conclusory statement that Sensibar is the alter ego of the other corporate defendants. *Compare Club Assistance Program, Inc. v. Zuckerman*, 594 F.Supp. 341, 351 (N.D.Ill.1984); *Magnus Electronics, Inc. v. Argentine Republic,*

637 F.Supp. 487, 492 (N.D.Ill.1986). Association's allegations in its petition regarding Sensibar's status as the alter ego of the other corporations was sufficient to withstand a motion to dismiss. The trial court erred in granting the dismissal on that basis.

The judgment of the trial court is affirmed in part and reversed and remanded in part.

PUDLOWSKI, P.J., and KAROHL, J., concur.