Marilyn CANTRELL, Plaintiff,

v.

**EXTRADITION CORPORATION OF AMERICA, et al., Defendants.**

No. 88–4357–CV–C–9.

United States District Court, W.D. Missouri, C.D.

March 12, 1992.

John S. Pletz, Venters, Pletz & Reed, P.C., Jefferson City, Mo., Carol Watson, Los Angeles, Cal., for plaintiff.

Mark A. Ludwig, Carson & Coil, P.C., Jefferson City, Mo., Michael Mossman, Nashville, Tenn., Donald C. Otto, Jr., Douglas L. Van Camp, Hendren & Andrae, Dale C. Doerhoff, Cook, Vetter & Doerhoff, Jefferson City, Mo., for defendants.

## ORDER DENYING DEFENDANT GEORGE'S MOTION TO QUASH SERVICE OF SUMMONS FOR LACK OF PERSONAL JURISDICTION OR TO DISMISS

BARTLETT, District Judge.

On October 18, 1990, plaintiff filed a Second Amended Complaint adding Sherman George and Planned Facilities Corporation as defendants. Plaintiff asserts that defendant Extradition Corporation of America:

> was the alter ego of defendant SHERMAN GEORGE and PLANNED FACILITIES CORPORATION.... In approximately 1985, defendant SHERMAN GEORGE founded ECA and was its sole owner and stockholder until he sold it in 1987. The acts of ECA are legally attributable to defendant GEORGE and piercing the corporate veil is warranted because at all times during defendant George's ownership, he operated ECA with inadequate capital and insufficient insurance for its risks and liabilities; the separate corporate personalities were not observed in that defendant GEORGE and his wife were the only officers of ECA; and defendant GEORGE was actively involved in ECA's operation as its chief executive officer and in the day-to-day activities of transporting prisoners, calling on accounts, supervising employees and overseeing the operation of ECA, including its finances which were intermingled with the personal finances of defendant GEORGE.

Second Amended Complaint at ¶¶ 2, 3.

On March 5, 1991, George moved that plaintiff's Second Amended Complaint be dismissed against him for lack of personal jurisdiction. George stated:

1. This defendant is a Tennessee resident.

2. This defendant has not and does not conduct any business in the State of Missouri.

3. There are no allegations whatsoever in the Complaint conferring jurisdiction over the person of this defendant; there is no allegation he transacted business in the state, made any contract within the state, committed a tortious act within the state, owns, uses or possesses any real estate situated in the state, or any other allegations sufficient to confer jurisdiction upon him.

George submitted an affidavit in support of his Motion to Dismiss in which he states:

1. I am a resident of the State of Tennessee.

2. I have never been a resident nor have I ever personally conducted any business in the State of Missouri.[1]

---

**1.** In contrast to this assertion, George testified in his deposition that he had some previous contact with Missouri.

Q. Did ECA have a contract with Camden County, Missouri in August of 1986?
A. What type of contract?
Q. To handle the transportation of prisoners.

3. Extradition Corporation of America was incorporated in the year 1985, and I was the sole shareholder of said corporation until 1987 when I conveyed 100 percent of the outstanding shares of said corporation to Planned Facilities Corporation.

4. Extradition Corporation of America conducted business as a separate corporate entity.

5. I own no real or personal property that is located in the State of Missouri and never have.

ECA has not asserted that this court lacks personal jurisdiction over it. ECA admits that "it was a corporation incorporated in Tennessee and doing business with Missouri and California to transport prisoners in extradition cases...." ECA's Answer at ¶ 2. ECA also "admits that all times it was acting under color of law and as the employee, agent, representative, and officer of the States of Missouri and California and Camden County, Missouri." *Id.* at ¶ 6. ECA also admits that it was hired to transport plaintiff on August 17, 1986, and that plaintiff was dropped off at the Camden County Jail in Camden, Missouri, on August 21, 1986. *Id.* at 7. There is no dispute that personal jurisdiction exists over ECA.

George argues that plaintiff has not met Missouri's two-pronged test for piercing the corporate veil:[2] "[A] mere allegation that defendant Sherman George is the alter ego of defendant Extradition Corporation of America, without allegations of fraud, injustice or an unlawful purpose, does not permit the court discretion to exercise personal jurisdiction over defendant Sherman George." Defendant's Reply at 3.

1. *Burden of Establishing Personal Jurisdiction*

█ A district court judge has broad discretion in deciding the manner in which to resolve personal jurisdiction issues. The court may rely on pleadings and affidavits alone or require that an evidentiary hearing be held:

> Whatever procedural path the district court chooses to follow determines the plaintiff's burden of proof and the standard to be applied on appeal. If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction over defendant. But if the court holds an evidentiary hearing—in a manner similar to determining the issue at trial—the plaintiff must demonstrate personal jurisdiction by preponderance of the evidence.

*CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986); *accord Watlow Electric Mfg. Co. v. Patch Rubber Co.,* 838 F.2d 999, 1000 (8th Cir.1988).

█ On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof. *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982). The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved

---

A. If I may elaborate.
Q. Please.
A. I feel like, from my point of view, there are two types of contract. There is one where it's a written contract, and there's a verbal contract. To the best of my knowledge, we did not have a written contract with Camden County. But when they called in at the request of the prisoner move, at that time we had a verbal contract.
Q. Did ECA ever transport anyone for Camden County prior to the transportation of Marilyn Cantrell?
A. Yes, ma'am.
Q. Approximately how many times?
A. I have no idea. I've personally been in Camden, Missouri, myself two or three times.

Deposition of Sherman George at 39–40.

2. The Missouri test for piercing the corporate veil is two-pronged: "first, the corporation must be controlled and influenced by persons or by another corporation; second, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate a fraud." *Terre du Lac Ass'n, Inc. v. Terre du Lac, Inc.,* 737 S.W.2d 206, 218 (Mo.App.1987) (citation omitted). "The mere fact of ownership and control does not of itself authorize piercing the corporate veil. The question is whether the corporations are being manipulated through their interrelationship to cause illegality, fraud, or injustice." *Id.* (citations omitted).

in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. *Wyatt*, 686 F.2d at 280; *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984).

On August 9, 1991, I granted plaintiff leave to conduct further discovery on the issue of whether personal jurisdiction could be exercised over George because the corporate veil of ECA should be pierced.

On October 10, 1991, I ordered George to answer plaintiff's third set of interrogatories by November 3, 1991. No Certificate of Service has been filed by George showing that he has answered the interrogatories.

Accordingly, I will rule on this motion to dismiss on the basis of the pleadings and affidavits received.

### 2. *Personal Jurisdiction—Fiduciary Shield Doctrine*

■ This court may not exercise personal jurisdiction over a defendant unless two elements are satisfied. First, Missouri's long-arm statute must authorize personal jurisdiction under the facts of the case. Second, the exercise of personal jurisdiction must be consistent with due process. *CPC–Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241, 243 (8th Cir.1990).

Missouri's long-arm statute[3] has been interpreted by the Missouri Supreme Court as permitting jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the due process clause of the Fourteenth Amendment. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984). Thus, the focus of inquiry is whether personal jurisdiction over George as an individual comports with due process.

George argues that the Complaint alleges no specific contacts with Missouri by him as an individual, that the contacts of ECA are not attributable to him as an individual, and that this court cannot exercise personal jurisdiction over him as an individual.

■ Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir.1989). The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long-arm statute. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 n. 3 (2d Cir.1981). Consequently, the Supreme Court has suggested that where an employee has contacts with the forum state in the course of his employment, the fiduciary shield doctrine does not prevent a finding of minimum contacts:

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.

*Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984) ("In *Calder v. Jones*, we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity").

---

3. Missouri's long-arm statute states in relevant part:

Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state; ...

Mo.Rev.Stat. § 506.500 (1992 Supp.).

In both *Calder* and *Hustler Magazine*, the Supreme Court applied the constitutional due process analysis to the contacts of the individuals concerned. The Supreme Court rejected the concept that a state-created corporate form created a due process limitation on jurisdiction over corporate employees.

Although the fiduciary shield doctrine does not affect a minimum contacts analysis, a state may limit its long-arm jurisdiction by a more aggressive use of the doctrine. Missouri courts have not addressed the issue presented in this case: whether the Missouri long-arm statute authorizes personal jurisdiction over a nonresident defendant whose only contacts with Missouri are in an employment capacity. In the absence of direct guidance from Missouri on this issue, I rely on the Missouri courts' interpretation of its long-arm statute as permitting jurisdiction essentially as broad as is authorized by the United States Constitution.[4]

Therefore, the correct jurisdictional inquiry is into the contacts that George had with Missouri relative to this dispute. George's argument that jurisdiction cannot be asserted over him because he acted as a corporate employee is rejected.

### 3. *Personal Jurisdiction—Minimum Contacts*

■ The Due Process Clause requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977). Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) ("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). The Supreme Court has stated the justification for this standard:

[W]here the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to re-

---

**4.** The cases cited by George in his discussion of "piercing the corporate veil" are inapposite because they address the issue of *liability*, not *jurisdiction*. Missouri courts have not held that the two-prong test for liability must be satisfied in order to obtain personal jurisdiction. Construing New York law, the Second Circuit Court of Appeals has staked out a middle-ground on this issue:

In deciding whether the corporation is a real or a shell entity, the appropriate standard should not be the very stringent test, normally applied in other contexts, for piercing the corporate veil. That test requires a showing not only that the corporation is a shell, but that it was used to commit a fraud. (citations omitted). When both of these showings are made the corporate entity is disregarded, and the individuals behind the corporate shell are held responsible for its liabilities. The fiduciary shield doctrine, however, is not concerned with liability. It is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another. In determining whether a corporation for which an owner-employee acts is really 'another,' it is sufficient to inquire whether the corporation is a real or shell entity. If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell.

*Marine Midland Bank,* 664 F.2d at 903. Under the Second Circuit test, personal jurisdiction over George would be proper because I have already concluded that plaintiff has made a prima facie showing regarding the first prong of the Missouri test for piercing the corporate veil: that ECA was controlled and influenced by George. *See* Order dated August 9, 1991, at 4–5.

quire him to submit to the burdens of litigation in that forum as well. *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2184; *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958).

Here, defendant George admitted that he entered into an unknown number of verbal contracts with Camden County, Missouri, to transport prisoners and that he personally had been to Camden County to transport prisoners two or three times. No one forced George to enter into these contracts or to perform these contracts within Missouri by transporting prisoners to or from the Camden County Jail. He has thus purposefully directed his activities at residents of Missouri. This litigation results from alleged injuries that arise out of or relate to ECA's contract to transport the plaintiff from Bakersfield, California, to Camdenton, Missouri.

By entering into numerous contracts within Missouri, George purposefully availed himself of the privilege of conducting activities within Missouri, thus invoking the benefits and protections of its law. Consequently, George's conduct within and connection with Missouri are such that he should reasonably anticipate being haled into court there.

The Eighth Circuit Court of Appeals has set out a five-part test for determining the sufficiency of a nonresident defendant's contacts with the forum: 1) the nature and quality of the contacts with the forum state; 2) the quantity of the contacts with the forum state; 3) the relationship of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties. *Land–O–Nod Co. v. Bassett Furniture Industries, Inc.,* 708 F.2d 1338, 1340 (8th Cir.1983). The first three factors are of primary importance while the last two factors are of secondary importance. *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987).

Here, the five-part test is satisfied. Each contract George entered into contemplated a more-than-transitory relationship; for instance, the contract out of which this case arises was entered into on August 8, 1986, and was not fully performed by ECA until August 21, 1986, when plaintiff was delivered to Camden County Jail. The contract may have contemplated an even longer relationship depending upon the date Camden County was to perform its obligation under the contract by paying ECA.

Furthermore, George's contacts with Missouri were numerous; the Complaint arises directly out of one of ECA's contracts with Camden County, Missouri to transport prisoners to the Camden County Jail; and plaintiff's residence in the Camden County Jail gives Missouri an interest in providing a forum for her case.

The exercise of personal jurisdiction over George in this case does not offend "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

Finally, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–2185. Here, George has failed to present a compelling case that other considerations render personal jurisdiction unreasonable.

Plaintiff has made a prima facie showing of personal jurisdiction over George. Accordingly, it is ORDERED that defendant Sherman George's Motion to Quash Service of Summons for Lack of Personal Jurisdiction or to Dismiss is denied.