**Marcella TWIGGS, etc., Appellant,**

v.

**NATIONAL OLD LINE INSURANCE CO., and Gravois Home Savings and Loan Association, Respondents.**

**No. 40037.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 17, 1979.

---

Kurt D. Breeze, Pannell, Dodson & Robinson, Festus, for appellant.

Benson Cytron, House Springs, Edwin L. Noel, St. Louis, for respondents.

REINHARD, Presiding Judge.

Plaintiff appeals from the Circuit Court's order granting defendants' Motion for a Directed Verdict at the close of plaintiff's case. Plaintiff contends that she adduced sufficient evidence to warrant submitting her case to the jury, and that the trial court erred in directing the verdicts.

At issue, as represented by plaintiff's petition, was the existence of a mortgage life insurance policy payable to defendant Gravois Home Savings and Loan Association (Gravois) on the death of Tommie Liskey (plaintiff's husband) in the amount of any outstanding balance on the mortgage. Tommie Liskey died and plaintiff sought collection of the policy proceeds to pay off the mortgage. She was informed that no policy had ever been issued to cover her husband. She then instigated the present action. The trial presented the following facts:

In March of 1971, plaintiff and her husband learned of a home for sale in Pevely, Missouri. The house was owned by the Gray family, distant relatives of plaintiff, who were in arrears on their loan payments. Gravois held the Deed of Trust on the home. Hopeful of acquiring the house, plaintiff and her husband went to Gravois' office to discuss terms. Once there, they were met by a Mr. Burnstill, Gravois' loan officer, who handled the transaction's particulars.

The "particulars" were these: 1.) Plaintiff and her husband were to bring the Gray's arrearages up to date; 2.) Plaintiff and her husband were then to become owners subject to the deed of trust but were not to be held primarily responsible on the note. Therefore, i. e., Gravois' only cause of action in the case a deficiency, would be against the former owners and not plaintiff or her husband; 3.) All monthly· installments were to be first credited toward the accrued interest on the loan and thereafter applied in reduction of principal; 4.) Plaintiffs were (and the testimony is discordant on this issue) to obtain mortgage life insurance on plaintiff's husband's life from National Old Line Insurance Company (National) naming Gravois as beneficiary. Title was taken in the names of plaintiff and her husband as tenants by the entirety. Grays arrearages were paid and plaintiff's husband executed the application for insurance.

Plaintiff's husband, Mr. Liskey, was not a well man. He suffered from a number of physical disorders (stroke, heart trouble, gall bladder removed, etc.) and was unable to work. He received Total Disability Social Security. Plaintiff, on the other hand, was gainfully employed and handled most of the couple's financial transactions, including making the payments on their home. Plaintiff made these payments, totalling $69.60 per month, of which $9.60 per

month reflected payment for the insurance. Plaintiff testified that neither she nor Mr. Liskey were ever informed that the application for insurance was denied although a letter from National to that effect was sent to them on April 5, 1971, according to officials of defendants. Apparently, the reason they were never so informed was because their address, as listed on the insurance application, was incorrect.

In any event, plaintiff, allegedly unaware that no insurance policy was in effect, dutifully continued making these payments of $69.60 every month for almost two years. Her husband died on January 15, 1973, and plaintiff sought recovery on the non-existent policy. It was then that plaintiff alleges she first learned (from Mr. Burnstill) no policy had ever been issued. Mr. Burnstill's attempt at reparation consisted of either refunding the $9.60 per month she had paid in advance, or, crediting these payments to the mortgage, thereby relieving her of mortgage payments for the succeeding four months. Plaintiff declined this offer and, on the advice of her attorney, continued making the mortgage payments.

As reflected in the couple's statement of Account, their total payments were credited first towards the interest and then towards the principal of the loan. Their account was twice debited in the amounts of $23.67 and $25.70 for insurance payments made to National. Mr. Burnstill testified that these payments were made in error, which error was not discovered until after Mr. Liskey's death.

Plaintiff presses a different theory on appeal than that which she urged at trial. In the trial court she alleged and attempted to prove that defendants, misrepresented to plaintiff that her husband's life was insured by the mortgage life insurance policy they sought to obtain.[1] Plaintiff now contends

---

1. In her petition she alleged that defendants, *"represented to plaintiff that there was in fact a 'Mortgage Life' insurance policy on the life of Tommie Liskey and that said policy was payable to defendant* Gravois Home Savings and Loan Association on the death of Tommie Liskey in the amount of any outstanding balance on the mortgage and that said payments would be made by defendant National Old Line Insurance Company; that in fact, no insurance policy was ever secured on the life of Tommie Liskey by defendant Gravois Home Savings

that the misrepresentation was not the existence of the policy, but the necessity of obtaining a policy before the sale of the home could be completed.[2]

In order to develop a submissible case of fraud in the trial court below, plaintiff must have established,

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [her] reliance on its truth; (8) [her] right to rely thereon; and (9) [her] consequent and proximate injury, and the failure to establish any one of these essential elements is fatal to recovery. *Gonseth v. K & K Oil Co.,* 439 S.W.2d 18 (Mo.App.1969) at page 25.

As plaintiff herself testified that both she and her husband knew he was signing an application only, and that National had the option to either accept or reject it; her own testimony refuted the allegation contained in her petition.[3] Apparently, this is the reason she does not urge the same theory on appeal.

However, Rule 55.33(b) provides that the pleadings may be amended by consent;[4] and if a trial court directs a verdict for a defendant at the close of plaintiff's evidence, a plaintiff may urge any and all possible theories of recovery on appeal. *Boyle v. Colonial Insurance Co. of America,* 525 S.W.2d 811[7] (Mo.App.1975). Thus, if plaintiff offered evidence in support of the theory she now propounds and if defendants failed to object, the pleadings would have been amended by consent, and this element of fraud would have been sustained by the evidence.

Defendants, in fact, objected to the testimony that Mr. Burnstill represented to plaintiff and her husband that the insurance coverage was required as a precondition to "assuming" the loan. At one point, during the discussion at the bench, plaintiff's attorney indicated,

I am *not trying to show that it's a misrepresentation.* There is evidence in this case from another agent of Gravois that it is *not* the policy of the company to require mortgage insurance. . . . Whether that's a misrepresentation or not I really don't care. I want Mr. Burnstill stating in the record that it is required, at least to her, to show their state of mind as to the *existence* of insurance. (Emphasis added.)

The trial court overruled defendants' objection saying the evidence was admissible for the limited purpose indicated by plaintiff's attorney, not for the purpose of proving the misrepresentation plaintiff now contends supports a submissible case.

and Loan Association with defendant National Old Line Insurance Company . . ." and further, "that plaintiff relied upon the representations of defendants that the life of Tommie Liskey was indeed insured." Also, "That the representations of defendants were in fact false and untrue and defendants, and each of them, knew said representations as aforementioned were false and untrue." (Emphasis added) She asked for $5,501.35 actual damages and $150,000.00 punitive damages.

2. In plaintiff's appellate brief she alleges as her sole Point Relied On that, "the trial court erred in sustaining both defendants' motions for directed verdict at the close of plaintiff's evidence for the reason that plaintiff's evidence established against both defendants a submissible case of fraud, the elements of which are that the defendant knowingly made a representation known by him to be false, intending that the hearer rely upon the misrepresented fact as

a material fact in performing some act which results in or causes approximate injury to the hearer; *and that plaintiff's evidence showed that defendants procured an insurance application from plaintiff's deceased husband by a false representation that insurance coverage was a necessary pre-condition to assuming a loan,* and in reliance upon that representation . . ." (Emphasis added)

3. The application signed by plaintiff's husband also provided, "that there shall be no insurance in force until the policy hereby applied for is issued and delivered to me during my lifetime in good health."

4. Rule 55.33(b) states: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

■■ Because of defendants' objections and plaintiff's in-court admissions, we cannot say this evidence came in by agreement or that the pleadings were amended by consent. *Hulsey v. Hulsey,* 550 S.W.2d 902[3–4] (Mo.App.1977). Rule 55.33(b). At that stage of the trial it is obvious plaintiff was still pursuing her theory that the misrepresentation was to the existence of the insurance. In light of plaintiff's pleadings, and the posture of the evidence then before the court, plaintiff failed to make a submissible case on an element of her action for fraud. Failure to make a submissible case on any one of the elements is, of course, fatal to recovery by a plaintiff in an action for fraud.

Affirmed.

GUNN and CRIST, JJ., concur.