Mark S. WION and Kelly A.
Wion, Appellants,

v.

CARL I. BROWN &
COMPANY, Respondent.

No. WD 43166.

Missouri Court of Appeals,
Western District.

May 14, 1991.

David P. Hargrave and David J. Weimer, Kansas City, for appellants.

Greg T. Spies and Leonard L. Wagner of Watson, Ess, Marshall & Enggas, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The plaintiffs Wion sued the defendant Carl I. Brown and Company for fraud and negligence in the financing of the purchase of a home. The case was submitted on the count for fraud, and the jury returned a $9500 verdict for the plaintiffs. The trial court sustained the motion of defendant Brown and Company for judgment notwithstanding the verdict. The plaintiffs Wion appeal.

The Wions, husband and wife, desired to purchase a home that they could afford, something within the $50,000 to $60,000 range, yet a home that did not require much repair or work. They consulted the listings at Coldwell Banker, viewed them, but found them not suitable. The Wions then set out on their own and were attracted to a residence for sale at 500 Donovan in Lee's Summit, Missouri. Coldwell Banker listed the price of the home as $69,500. It described the property as a three bedroom home with one bath, a woodburning stove, "over a crawl space."

On that same day, March 12, 1988, they toured the home in the company of the Coldwell Banker agent, Diane Vospette. They were pleased with the home and returned to the Coldwell Banker office to discuss the financing. The agent concluded after some analysis that the Wions would have no difficulty qualifying for the loan. The Wions decided to pursue the financing and to make an offer on the house. Mr. Wion remembered then that he had not yet inspected "underneath the house" and wanted to hire a professional inspector for that purpose because he was inexperienced in such things. Diane informed him then that, if "they went FHA," that agency's inspector would examine the home from top to bottom, and they would even get under the crawlspace.

The agent and the Wions returned to 500 Donovan on that same day and went through the property again. Diane said then that "if there was no room for [the FHA inspector] to get under the crawlspace he would not approve the loan." Mr. Wion felt at ease with that and decided to go back to Coldwell Banker after they had looked through the house, and make an offer to purchase the home. The Wions executed a formal Offer to Purchase that afternoon. The sellers made a counteroffer the next day, which the Wions accepted.

On March 15, 1988, two days after the Wions and the sellers agreed to the property transaction, the Wions and their agent met at the Coldwell Banker office with Liz Yancey, an employee of the defendant Brown and Company. The purpose of the meeting was to arrange for financing because financing was a condition of the real estate contract. The Wions received doc-

uments that informed them that the purpose of the FHA appraisal was to determine the maximum amount of the loan. The loan application, moreover, specifically instructed the purchasers that HUD did not warrant the value or condition of the property and that the purchasers should satisfy themselves that they were acceptable.

Wion testified that at that meeting he expressed concern that he had not had a professional inspection done "underneath the home," and asked if he "should have to obtain a professional inspection of the home." Wion related: "Liz Yancey told me that I would be wasting my money to get a professional inspection, since I was already paying for it in the service charges, and that the FHA loan had to be approved by an FHA appraiser-inspector." His own professional appraiser "would have no bearing on whether the loan would be approved or not," Liz said. She told him that if the FHA appraisal determined a value less than the purchase price of the home, the contract to purchase would be void. She told him also that if the FHA appraiser-inspector "did not pass the loan because of major damage that the loan would not be okayed." The Wions decided to forgo an independent appraisal-inspection, since it "would have no bearing on whether the loan would be approved or not," and since they were already paying Brown and Company for one.

The FHA appraisal was performed on April 11, 1988, by Jerry Newsome, an employee of the defendant Brown and Company. Newsome testified that as an FHA appraiser, he had a duty to inspect the crawlspace of the home, and that this inspection was a factor in his determination of the value of the home. Newsome did not remember whether or not he inspected the crawlspace of the home. The appraisal report did not note any unusual conditions existing in the crawlspace. The appraisal also indicated that no repairs were necessary. The appraisal estimated the market value of the home at $69,500.

The loan was approved and on May 6, 1988, the Wions conducted a mechanical inspection of the house. They did not inspect the crawlspace then because none of the items in the mechanical inspection report were located there. They did not see or talk to anyone from Brown and Company on that occasion. The sale was closed ten days later, on May 16, 1988. They did not receive the FHA appraisal until several days after the closing. On May 22, 1988, the Wions moved into their new home. A problem developed that required access to the crawlspace. Wion then discovered that the first floor of the home was propped up with railroad ties, cinderblocks, a steel pipe and a jack. There were no footings to support the building. As a result, the floor of the house was sagging.

Newsome testified that his opinion of the value of the house would have been the same whether or not the railroad ties were used to support the floor of the house. There was evidence that Brown and Company terminated its relationship with Newsome in July of 1988 because Brown and Company "lost confidence in the appraisal department's ability to develop timely and accurate appraisals for loan purposes, including Jerry Newsome's ability to provide timely appraisals."

Wion testified that the actual value of the home at the time of purchase was $60,000. That estimation of worth was based on comparable sales. On the basis of that evidence of valuation, the difference between the purchase price of the home and its actual value at purchase was $9500. The jury returned a verdict for the Wions for $9500. The trial court entered judgment for the defendant Brown and Company notwithstanding the verdict.

■ The appeal contends that the entry of judgment for the defendant notwithstanding the verdict for the plaintiffs was error. That contention presents the question of whether the plaintiffs proved a submissible case of fraud. In that determination the court of appeals views the evidence in the light most favorable to the verdict and disregards all inferences to the contrary. *Marti v. Economy Fire & Casualty Co.*, 761 S.W.2d 254, 255[1, 2] (Mo.App. 1988). A judgment notwithstanding the verdict is proper only if upon such a view

of the evidence, reasonable minds could not differ as to the proper verdict. *Id.*

It is evident from the pleading of the petition and the issues joined at the trial, and now on appeal, that the cause of action submitted to the jury and found by verdict in favor of the Wions was for fraudulent misrepresentation. The instruction that submitted the claim for fraud, however, is not a part of the legal file or otherwise present. Thus, the facts of the component propositions that were submitted to the jury for finding and verdict are not known to us. The judgment notwithstanding the verdict, moreover, as entered by the trial court is a general order and does not ascribe the insufficiency of proof to return the verdict to any particular element of the claim.

▉ The elements of common law fraud are 1) a representation, 2) its falsity and, 3) materiality, 4) the speaker's knowledge of its falsity or ignorance of its truth, 5) the speaker's intent that the representation be acted upon by the hearer in a manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the truth of the representation, 8) the hearer's right to rely thereon, and 9) injury to the hearer proximately caused by that reliance. *Sofka v. Thal*, 662 S.W.2d 502, 506[2] (Mo. banc 1983). The motion for judgment was properly granted if one or more of these essential elements of the cause of action were not supported by substantial evidence. *School Dist. v. U.S. Gypsum Co.*, 750 S.W.2d 442, 445[1] (Mo.App.1988).

In the absence of a verdict director, we turn to the pleadings and to the evidence to find the premises of fact upon which the claim rests. The petition upon which the evidence was received and the verdict rendered pleaded that, on or about May 6, 1988, Brown and Company, through its agent, and with the intent to induce the Wions to buy the residence at 500 Donovan and to finance the purchase through Brown and Company, represented to the Wions that "the said residence had been normally maintained, required no repairs, was worth ... $69,500 and that a proper and full FHA

appraisal had been performed by Brown and Company's agent." It was the evidence at the trial, however, that on May 6, 1988, the Wions and Liz Yancey [the Brown and Company agent to whom the fraudulent misrepresentation is ascribed] neither spoke to nor were in the company of the other. Brown and Company contends that lapse of evidence deprived the case of proof of a misrepresentation within the pleadings and, hence, the judgment of validity.

▉ Rule 55.15 requires that a petition for fraud aver the circumstances constituting the fraud with particularity. It is not every circumstance of the fraud, but its essential elements, that must be particularly described for a petition to present a justiciable claim. *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 882[7, 8] (Mo.App. 1988). These elements as pleaded then must be strictly proven for submission to the jury—and that by clear and convincing evidence. *Gibson v. Smith*, 422 S.W.2d 321, 327[4–8] (Mo.1968); *Centerre Bank v. Bliss*, 765 S.W.2d 276, 284[2] (Mo.App. 1988). A failure to establish any one of the essential elements of fraud is fatal to recovery. *Dolan v. Rabenberg*, 360 Mo. 858, 231 S.W.2d 150, 154[2, 3] (Mo.1956). Thus, proof that varies from the mode of pleading that Rule 55.15 prescribes as essential will not support a judgment in favor of the petition. The date of the representation, however, is not as such an essential element of the claim, but an evidentiary fact. A variance between the pleading and proof as to such a particular does not affect the judgment. *Empire Bank v. Walnut Prods., Inc.*, 752 S.W.2d 404, 406[1] (Mo. App.1988).

At the trial, the Wions testified that the misrepresentations they relied upon to their damage were made to them by Liz Yancey on March 15, 1988, when they met to discuss the financing of the purchase of the home. It was then, as their evidence has it, that Wion expressed uneasiness concerning the "underneath of the house." It was then he asked whether he "should have to obtain a professional inspection of the house." The series of responses by Liz

Yancey, as reported by the Wions, form the basis of the claim.

■ On this appeal, the misrepresentation that the Wions argue was made and relied upon to their damage was not any statement attributed to Yancey, but an innuendo. It was not the response that it would be a "waste of money" for Wion to obtain a separate professional inspection since he was already paying for it and—in any event—that an FHA loan had to be approved by an FHA appraiser, or that the valuation by any other professional appraiser "would have no bearing" on the approval of the loan, or that if the FHA appraiser "did not pass the loan because of major damage" the loan would not be approved, or that if the appraisal "came back" for a value lower than the purchase price the contract would be void—or any composite of them—that falsely misled the Wions to act to their injury. It was rather these responses, understood by the Wions as a representation by Brown and Company that the house was "worth $69,500," that the Wions postulate for the right to keep the jury verdict and reverse the judgment.

■ The averments of the petition do not tolerate the innuendo that the Wions now argue as the basis for their claim of fraud, nor does the evidence. It is the governing principle that the misrepresentations that amount to fraud may be shown by circumstantial evidence, and may be accomplished by conduct or artifice, as well as by words calculated to mislead another. *Bedell v. Daugherty*, 242 S.W.2d 572, 574[9] (Mo. 1951); *Jones v. West Side Buick Auto Co.*, 231 Mo.App. 187, 93 S.W.2d 1083, 1086[1, 2] (1936). The petition of the Wions pleads that they were induced to purchase and finance the home by "acts and representations" of the defendant Brown and Company's agent, Yancey, but avers only false representations. Those averments of the pleading, moreover—representations by Yancey to the Wions that the "residence had been normally maintained," "required no repairs," "was worth $69,500" and that "a proper and full FHA appraisal had been performed by Defendant's agent"—were not realized by the evidence.

The proofs made by the Wions, rather, were of spoken representations to them by Yancey that, since the FHA loan would not issue unless approved by the FHA appraiser, it would be a waste of their money to engage a separate inspector; that the report by such a separate appraiser would have no bearing on the approval of the loan; and that the loan would not be approved and the contract would be void if the FHA appraisal was for less than the purchase price, or because of "major damage" to the house. These proofs were at variance with the pleadings. It is the usual rule that a plaintiff who alleges certain and definite misrepresentations must substantially prove those alleged. *Swager v. Vogt*, 435 S.W.2d 49, 51[1, 2] (Mo.App.1968). That interchange on March 15, 1988, between the Wions and Yancey, on which the claim of fraud rests, however, came before the jury without objection with the effect of averments, pleaded and proven. *Twiggs v. National Old Line Ins. Co.*, 581 S.W.2d 877, 880[3] (Mo.App.1979). Rule 55.33(b).

■ At the trial, on the motion for judgment notwithstanding the verdict, the Wions argued the sufficiency of the evidence as "an implied representation that the house was in fact worth the purchase price, $69,500." In the absence of a pleading still definitive or of the instruction by which the jury actually received the issue for decision, we assume the verdict rests on the theory of the evidence the Wions argued at the trial. *Twiggs v. National Old Line Ins. Co.*, 581 S.W.2d at 879.

■ We review the evidence to determine, given the intendments most favorable to the verdict, whether the theory of recovery asserted by Wions to the trial court—and presumably submitted to the jury—proved a prima facie case.

■ To prove actionable fraud, it is not essential that a misrepresentation be directly made or consist of positive assertions. A false impression made by words or deeds in order to mislead another and gain an undue advantage over the other

suffices. *Bank of N. Am. v. Crandall*, 87 Mo. 208, 212 (1885); *Jones v. West Side Buick Auto Co.*, 93 S.W.2d at 1086[1, 2]. In such a case, a misrepresentation implied from the circumstances may be equivalent to a misrepresentation positively expressed. Although to be actionable the misrepresentation need not be in words, nevertheless it must constitute an affirmation of fact and not merely of opinion. *Finke v. Boyer*, 331 Mo. 1242, 56 S.W.2d 372, 375[2–6] (1932). "A representation of fact is a positive assertion that the fact is true. A representation of opinion, on the other hand, is only one of the maker's belief as to the fact." Restatement (Second) of Torts § 538A comment b (1976). That is why the law admits the right of a hearer to rely on an assertion of fact, but not on an expression of opinion. The law assumes, rather, that a hearer of an opinion is equally able to come to a correct judgment of opinion on the matter as is the speaker. *Stonemets v. Head*, 248 Mo. 243, 154 S.W. 108, 114[8] (1913).

■ The misrepresentation that the Wions inferred from the words of agent Yancey and upon which their claim for fraud rests was "that the house was in fact worth the purchase price, $69,500." Statements as to value or worth are in the usual context expressions of opinion, and not of fact, and are not actionable. *Mitchell v. Eidson*, 330 Mo. 445, 50 S.W.2d 135, 137[2, 3] (1932). A statement of opinion nevertheless, when justified by the circumstances, may reasonably be understood to include an implied assertion of the existence or non-existence of fact. "In that case the maker may be subject to liability on the basis of the implied representation of fact." Restatement (Second) of Torts § 542 comment b (1976); *Stonemets v. Head*, 154 S.W. at 114[8]. The statements that come most frequently within this rule of law are those concerning value. *Finke v. Boyer*, 56 S.W.2d at 375[2–6].

The Wions, however, do not rest their claim of fraud on a statement of opinion by Yancey concerning the value or worth of the home that, under the circumstances, may have justified their understanding that Yancey asserted such opinion as fact, to be treated by the Wions as fact, and to be relied on as such in the transaction. There was no opinion of value of the home expressed by Yancey to the Wions, nor do the Wions contend there was. They rest their claim, rather, on the repartee on March 15th. They assert that the representations made by Yancey to them on that day [1] were *equivalent* to an opinion of value of the home and, under the circumstances, "an implied representation that the house was in fact worth the purchase price, $69,500."

That train of propositions, however, misunderstands the rule of liability that it invokes and the practical equity that informs the rule. It is the misrepresentation of the existence of a fact, and not expression of an opinion, that is actionable. That is because "[a] representation of fact is a positive assertion that the fact is true. It implies that the maker has definite knowledge or information which justifies the positive assertion. A representation of opinion, on the other hand, is only one of the maker's belief as to the fact. It implies that he does not have definite knowledge, that he is not sufficiently certain of what he says to make the positive statement...." Restatement (Second) of Torts § 538A comment a (1976). The rule makes allowance nevertheless for those special circumstances in the ordinary transactions of life where the maker of a representation of an opinion, because of special knowledge of the matter or other particular incident, has reason to expect that the hearer will rely on that opinion. In those cases, the law invests the expression of opinion with the efficacy of an affirmation of fact to enable redress to one who relied and acted upon the misrepresentation and was in-

1. These representations, the composite responses by Yancey to the Wions, as already noted, were: It would be a waste of their money for the Wions to pay for a separate appraisal because such a report would have no bearing on the approval of the loan, since the FHA loan would not issue unless approved by the FHA appraiser, and that the loan would not be approved and the contract would be void if the FHA appraisal was for less than the purchase price, or because of "major damage" to the house.

jured. *Alexander v. Sagehorn*, 600 S.W.2d 198, 201[4] (Mo.App.1980).[2]

▮▮ The Wions do not claim that they were misled and injured by reliance on a false opinion of value asserted as fact. Nor do they claim that any of the representations, either of opinion or fact, made to them by Yancey were untrue.[3] They claim only that the representations were *equivalent* to an opinion of the value of the home given the efficacy of material fact, and so, an opinion on which they had the right to rely. There was no untrue representation proved *prima facie*, and a true representation cannot be made the basis of fraud. *Grindley v. Blankenship*, 671 S.W.2d 393, 395[1] (Mo.App.1984). Nor was there any expression of opinion by Brown and Company to the Wions that the house was worth the $69,500 purchase price to invest as an implied representation of material fact.

We have as an incident of this adjudication determined that the element of falsity was not proven as to any representation. We need not address the failures of proof on the elements of reliance, right to rely and damages that Brown and Company insistently argues from the evidence. The Wions failed to prove a submissible case.

The entry of judgment for the defendant Brown and Company notwithstanding the verdict for the Wions is affirmed.

2. The full reach of that rule of liability is given in Restatement (Second) of Torts § 542 (1976):

**Opinion of Adverse Party**

The recipient of a fraudulent misrepresentation of the maker's opinion is not justified in relying upon it in a transaction with the maker, unless the fact to which the opinion relates is material, and the maker

(a) purports to have special knowledge of the matter that the recipient does not have, or

(b) stands in a fiduciary or other similar relation of trust and confidence to the recipient, or

(c) has successfully endeavored to secure the confidence of the recipient, or

(d) has some other special reason to expect that the recipient will rely on his opinion.

Our decisions are in accord with this statement of principle. *See, e.g. Stonemets v. Head*, 248 Mo. 243, 154 S.W. 108, 114[8] (1913); *Collins v. Lindsay*, 25 S.W.2d 84, 90[8, 9] (Mo.1930); *Shepherd v. Woodson*, 328 S.W.2d 1, 7[6] (Mo. 1959) and *Alexander v. Sagehorn*, 600 S.W.2d 198, 201[4] (Mo.App.1980).

All concur.

MANFORD, J., did not participate in the decision of this case due to his death on February 12, 1991.

3. The evidence does not dispute that a separate appraisal by the Wions would have no bearing on the approval of the loan. That representation, whatever its quality as opinion or fact, became irrelevant in any event because the loan was approved by the FHA appraiser in the amount needed for the purchase of the home. The approval and grant of the loan, moreover, proved the truth of the representation that the FHA loan would not be approved and the contract would be void if the FHA appraisal was for less than the purchase price. Nor does the evidence undertake to dispute that the appraiser found no "major damage" to the property—the other condition represented to the Wions that would prevent the issuance of the loan in the amount of the purchase price. A party who claims damage from reliance on a fraudulent representation must establish each of the elements by clear and convincing evidence. *Centerre Bank v. Bliss*, 765 S.W.2d 276, 284[2] (Mo. App.1988).