# United States Court of Appeals
## For the Eighth Circuit
_____

No. 17-3533
_____

FCS Advisors, LLC; Brevet Direct Lending - Short Duration Fund, L.P.

*Plaintiffs - Appellants*

v.

State of Missouri; Douglas Nelson

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: February 12, 2019
Filed: July 9, 2019
_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

An investor loaned $20 million to EngagePoint, Inc., which was the prime contractor on a major software project for the State of Missouri. When Missouri terminated the contract and EngagePoint was unable to repay its debts, the investor sued and claimed that Missouri had fraudulently induced the loan and illegally

discriminated against EngagePoint. The district court[1] dismissed the lawsuit, and we affirm.

## I.

Missouri hired EngagePoint, a minority-owned information-technology company, to redesign the software for its health-benefits programs. Douglas Nelson, the Commissioner of Missouri's Office of Administration at the time, managed the project, which had an estimated cost of $147 million financed through a combination of state and federal funds.

When EngagePoint's costs ballooned, Nelson allegedly encouraged the company to do something to improve its cash flow. Acting on this advice, EngagePoint turned to Brevet Direct Lending - Short Duration Fund, L.P. and its administrative agent, FCS Advisors, LLC (together, "Brevet"), for a loan. Brevet is a private lender engaged in so-called "impact lending," which focuses on promoting social or environmental objectives such as, in this case, supporting a minority-owned business.

Before making the loan, Brevet held a conference call with Nelson, who allegedly "led [Brevet] to believe, in words or substance," that he was pleased with EngagePoint's work and that the company was likely to continue to serve as the prime contractor through the end of the project. Shortly after the call, Brevet approved the loan.

Just days later, however, EngagePoint's role diminished. And within months, Missouri terminated EngagePoint altogether, refused to pay the company for its past work, and found a new prime contractor. This sequence of events left the company unable to repay its loan and Brevet looking for a way to recoup its losses.

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

Brevet sued Nelson and the State of Missouri in federal district court based on two theories. The first was that Nelson fraudulently induced it into making what turned out to be an ill-advised loan. The second was that Nelson's alleged racial animus toward EngagePoint's "Asian-Indian American management" led to the company's termination, which violated federal anti-discrimination laws. The district court rejected both theories and dismissed Brevet's complaint.

## II.

We review the dismissal de novo, "accepting as true the allegations . . . and drawing all reasonable inferences in favor of the nonmoving party." *Star City Sch. Dist. v. ACI Bldg. Sys., LLC*, 844 F.3d 1011, 1016 (8th Cir. 2017). To survive a motion to dismiss, the complaint had to contain "sufficient factual matter" to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The fraudulent-inducement claim had to be pleaded with particularity, including "the who, what, where, when, and how of the alleged fraud." *Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n*, 605 F.3d 617, 622 (8th Cir. 2010) (citation omitted); *see also* Fed. R. Civ. P. 9(b) (requiring fraud to be pleaded with particularity).

## A.

We begin there. Brevet alleges that Nelson fraudulently induced the loan by leading Brevet to "believe, in words or substance," that EngagePoint would remain through the end of the project. According to the complaint, Nelson had a different plan, which was to terminate EngagePoint, and induced Brevet to complete the loan to protect Missouri's financial interests.

Absent from the complaint, however, are any false representations of material fact. *See Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007). The closest it comes is the allegation that Nelson "led [Brevet] to believe" that "EngagePoint was performing well" and would "likely . . . continue

-3-

working on Phases II and III [of the project] so long as its access to liquidity improved." But these are, at most, mere expressions of Nelson's opinion or predictions of the future, not statements of material fact. *See Clark v. Olson*, 726 S.W.2d 718, 719–20 (Mo. banc 1987) ("[E]xpressions of opinion are insufficient to authorize a recovery for fraudulent misrepresentation . . . ."); *Arnold v. Erkmann*, 934 S.W.2d 621, 626–27 (Mo. Ct. App. 1996) ("Statements and representations as to expectations and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation."); *see also Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 587 (Mo. Ct. App. 2000) (distinguishing between statements of opinion and statements of fact).

To be sure, making a false "[s]tatement[] of present intent," *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir. 1985), and stating an opinion implying "the existence or non-existence of fact" are both actionable under Missouri law, *see Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 955 (Mo. Ct. App. 1991). But even when the complaint describes Nelson's "comments," it provides no detail about what Nelson said or how he said it. For example, the complaint simply says that Nelson led Brevet "to believe by his conduct and comments that his present intent was to continue to use EngagePoint," without describing his actual words or conduct. This falls well short of pleading fraud with particularity.

B.

Brevet's unlawful-discrimination claims fare no better. The Civil Rights Act of 1866, as amended, protects the "right" of "[a]ll persons" to "make and enforce contracts" and enjoy "all benefits, privileges, terms, and conditions of the contractual relationship" free of racial discrimination. 42 U.S.C. § 1981(a), (b). Brevet alleges that Nelson's decision to terminate Missouri's contract with EngagePoint was motivated by racial animosity toward the company's managers. *See id.* § 1981(b) (making clear that the statute applies to decisions to terminate a contract).

-4-

There are at least two problems with Brevet's theory. The first is that Brevet has not "identif[ied] an impaired 'contractual relationship' under which [*it*] ha[d] rights." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468–69 (8th Cir. 2009) (en banc) (citation omitted). The software contract was between Missouri and EngagePoint, not Brevet, and section 1981 does not allow Brevet to sue on EngagePoint's behalf, even if it too had a contractual relationship with the company. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) (clarifying that section 1981 does not authorize derivative causes of action). To hold otherwise, the Supreme Court explained in *McDonald*, would transform section 1981 into a "strange remedial provision" allowing anyone to sue for the "hurt" associated with racial discrimination as long as it is "somehow connected to *somebody's* contract." *Id.* at 476.

To the extent Brevet is relying on its own agreement with EngagePoint, its section 1981 claim fails for another reason. Brevet was not "the direct target of discrimination," nor did it experience discrimination based on its "relationship to, association with, or advocacy" for EngagePoint. *Bilello v. Kum & Go, LLC*, 374 F.3d 656, 660 (8th Cir. 2004) (rejecting a section 1981 claim because the "challenged practice . . . was not specifically targeted at" the plaintiff); *see also Combs v. The Cordish Cos.*, 862 F.3d 671, 684 (8th Cir. 2017) ("[T]he question is not whether [the plaintiff] has presented evidence of discriminatory conduct on the part of defendants . . . . The question is whether he has shown evidence that he personally was the target of [the discriminatory conduct].").

To be sure, the complaint alleges that "Nelson also discriminated against [Brevet] directly by making fraudulent and/or false or materially misleading representations to it because of its association and work with EngagePoint's Asian-Indian American management." But this is a conclusory allegation based on a fraud theory that is itself inadequately pleaded. *See supra* Part II.A. The allegation is also implausible, particularly given that Brevet's complaint identifies independent non-discriminatory reasons for Nelson's actions. *See Netterville v. Missouri*, 800 F.2d 798, 801–02 (8th Cir. 1986) (explaining that the plaintiff's section 1981 claim failed

because the complained-of behavior was caused by neutral factors, not an "intent to discriminate against [the plaintiff] because of her race").

For similar reasons, Brevet has failed to state a claim under Title VI of the Civil Rights Act of 1964, which prohibits racial discrimination "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Brevet itself was not a participant in any federal program, so the only way it can sue is if the statute creates a cause of action for those who, like Brevet, have been incidentally harmed by racial discrimination targeted at others. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 (2014) (referring to this inquiry as the "zone-of-interests test"); *see also Alexander v. Sandoval*, 532 U.S. 275, 288–91 (2001) (examining the text and structure of Title VI to determine the availability of a private remedy). We conclude that it does not.

Title VI prohibits being "excluded from," "denied the benefits of," or "subjected to discrimination under" a federally funded program "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. Brevet has not alleged that it has suffered any of these harms. Nor has it alleged that it suffered discrimination because of the "race, color, or national origin" of its owners, managers, or employees. *Id.*; *see also Thompson v. Bd. of Special Sch. Dist. No. 1*, 144 F.3d 574, 581 (8th Cir. 1998) ("To establish the elements of a prima facie case under Title VI, a complaining party must demonstrate that *his/her* race, color, or national origin was the motive for the discriminatory conduct." (emphasis added)). And although EngagePoint might have a claim under Title VI if it really suffered the discrimination that Brevet alleges, nothing in the statute even hints that the "zone of interests" protected by Title VI covers third parties owed money by victims of discrimination. *Lexmark*, 572 U.S. at 129. Such an injury is simply beyond Title VI's reach.

## III.

We accordingly affirm the judgment of the district court.

_____